37 A.3d 1175

Herbert L. DALEY and Evelyn Daley, H/W

v.

A.W. CHESTERTON, INC. and U.S. Supply
Company and Duro–Dyne Corporation.

**Appeal of U.S. Supply Company and Duro–Dyne Corporation.**

Supreme Court of Pennsylvania.

Argued Dec. 1, 2010.

Decided Feb. 21, 2012.

336

Paul Brendan Kerrigan, Charles Michael McGivney, Jr., for U.S. Supply Company and Duro–Dyne Corporation.

Mark Douglas Eisler, Wilson Elser, Moskowitz, Edelman & Dicker, L.L.P., for A.W. Chesterton, Inc.

Edward M. Nass, Michael A. Rowe, Howard, Brenner & Nass, P.C., Philadelphia, for Daley, Herbert and Evelyn.

BEFORE: CASTILE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

*OPINION*

Justice TODD.

In this appeal by allowance, we consider whether the separate disease rule, which also has been referred to as the "two-disease" rule, allows an individual to bring separate lawsuits for more than one malignant disease which allegedly resulted from the same asbestos exposure. We conclude that it does, and, accordingly, affirm the order of the Superior Court, which reversed the trial court's grant of summary judgment in favor of U.S. Supply Co. ("U.S. Supply") and Duro–Dyne Corp. ("Duro–Dyne") (collectively, "Appellants").[1]

In 1989, Appellee Herbert L. Daley was diagnosed with pulmonary asbestosis[2] and squamous-cell carcinoma of the right lung.[3] In October 1990, Daley and his wife (collectively, "Appellees") filed a personal injury action (the "1990 Action") against several defendants seeking compensatory damages for

1. In a motion for discontinuance filed with this Court on August 25, 2010, A.W. Chesterton, Inc. indicated it reached a settlement with Appellees; accordingly, Chesterton is no longer a party to this appeal.

2. Pulmonary asbestosis is a nonmalignant asbestos-related disease characterized by the permanent deposition of substantial amounts of particulate matter in the lungs resulting from the inhalation of asbestos fiber dust. Asbestosis is sometimes referred to as fibrotic lung disease, pneumoconiosis, or interstitial pulmonary fibrosis. *See* National Institutes of Health, National Heart Lung and Blood Institute, Diseases and Conditions Index, *Asbestos–Related Lung Diseases*, http://www.nhlbi.nih.gov/health/dci/Diseases/asb/asb_all.html (last visited Sept. 1, 2011) (hereinafter "Asbestos–Related Lung Diseases"). Other nonmalignant asbestos-related diseases include pleural thickening and parenchymal asbestosis.

3. Lung cancer (pulmonary carcinoma) is one of the two common types of malignant asbestos-related diseases; the other is mesothelioma. *Abrams v. Pneumo Abex Corp.*, 602 Pa. 627, 633 n. 2, 981 A.2d 198, 202 n. 2 (2009). There are four types of asbestos-related lung cancers: squamous (cell) carcinoma; small cell (oat cell) carcinoma; large cell carcinoma; and adenocarcinoma. Piero Mustacchi, M.D., *Lung Cancer Latency and Asbestos Liability*, 17 Journal of Legal Medicine 277, 280 n. 7 (June 1996). Although cancer is not considered medically linked to asbestosis, in that cancer is not an outgrowth or complication of asbestosis, individuals who contract asbestosis are at a heightened risk for lung cancer. *See, e.g.*, National Institutes of Health, National Cancer Institute, Cancer Topics Fact Sheet, Asbestos Exposure and Cancer Risk, http://www.cancer.gov/cancertopics/factsheet/Risk/asbestos (last visited Sept. 9, 2011).

work-related pulmonary asbestosis and lung cancer. Neither of the appellants in the instant case was a named defendant in the 1990 Action. Appellees settled the claims raised in the 1990 Action in 1994.

During the summer of 2005, Daley was diagnosed with malignant pleural mesothelioma.[4] On October 24, 2005, Appellees filed suit against U.S. Supply, Duro–Dyne, A.W. Chesterton ("Chesterton"), and eleven other defendants. Appellees alleged in their complaint that Daley's mesothelioma was caused by the same asbestos exposure that resulted in his lung cancer and pulmonary asbestosis, for which he sought and obtained compensation in 1990. U.S. Supply, Duro–Dyne, and Chesterton filed motions for summary judgment, contending that, because Daley previously filed an action for a malignant asbestos-related condition in 1990, Pennsylvania's "two-disease" rule did not allow him to file an action for a second malignant asbestos-related disease—herein, mesothelioma—in 2005.[5] In addition, the companies argued that, at the time of the 1990 Action, Pennsylvania had not yet adopted the two-disease rule, and, therefore, the requirements of Pennsylvania's single cause of action rule applied, such that Appellees' 2005 Action for mesothelioma was barred by the two-year statute of limitations.[6]

4. Mesothelioma is a rare disease characterized by tumors arising from mesothelial cells in the membranes that line the lungs, abdomen, and heart; these membranes are called the pleura, peritoneum, and pericardium, respectively. Barry L. Castleman, *Asbestos: Medical and Legal Aspects* 104 (5th ed.). Mesothelioma is sometimes referred to as cancer of the lining of the lung. Although mesothelioma can be either benign or malignant, "[b]enign, localized, mesotheliomas are so very rare that in medical parlance, the term mesothelioma is, as a rule, applied to the diffuse and almost invariably fatal cancer" that arises from the two-layered membrane that envelops the lungs, gastrointestinal tract, heart, or testicle. Mustacchi, *supra* note 3, at 280 n. 8. Moreover, because mesothelioma, in general, is so rare, "any case occurring after a well attested and substantial asbestos exposure is commonly accepted as being caused by that exposure." *Id.* at 283 (footnote omitted); *see also Cancer Sourcebook* 336 (Karen Bellenir ed., 2007) (an estimated 70% to 80% of mesothelioma cases involve prior asbestos exposure).

5. U.S. Supply and Duro–Dyne also sought summary judgment on the basis of lack of product identification, but the trial court dismissed these motions as moot.

6. Although Appellants raised this argument in their Petition for Allowance of Appeal, this Court did not grant review of this issue.

By separate orders dated September 11, 2006, the trial court granted the motions for summary judgment. In so doing, the trial court acknowledged that the Pennsylvania Superior Court, in *Marinari v. Asbestos Corp., Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) (*en banc*), adopted, for purposes of asbestos litigation, a "two-disease" rule, allowing plaintiffs "to bring one action based on a nonmalignant asbestos disease and a subsequent action for any separately diagnosed malignant disease." Trial Court Opinion, 1/8/07, at 3. The trial court further noted that, in *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), and *McNeil v. Owens–Corning Fiberglas Corp.*, 545 Pa. 209, 680 A.2d 1145 (1996), this Court determined that "malignant and nonmalignant asbestos-related injuries constitute separate claims." Trial Court Opinion, 1/8/07, at 3.

However, relying on the Superior Court's refusal to allow a plaintiff to bring more than one claim for symptomatic nonmalignant asbestos disease in *Bowe v. Allied Signal Inc.*, 806 A.2d 435 (Pa.Super.2002), and *Gatling v. Eaton Corp.*, 807 A.2d 283 (Pa.Super.2002), the trial court concluded "the two-disease rule, as adopted by Pennsylvania courts, permits a plaintiff to bring only *one* cause of action for nonmalignant diseases caused by asbestos exposure and then only *one* subsequent action for malignant diseases caused by that same asbestos exposure." Trial Court Opinion, 1/8/07, at 4–5 (emphasis original). As Appellees previously filed an action for the malignant disease of lung cancer, the trial court held they were precluded from bringing a subsequent action for the malignant disease of mesothelioma.

Appellees appealed to the Superior Court, which, in a unanimous published opinion authored by Judge Susan Peikes Gantman, vacated the trial court's orders granting summary judgment. The Superior Court concluded the trial court had misapplied the law by adopting an "unduly restrictive" interpretation of *Marinari*, and stated:

Although Pennsylvania case law frequently uses the nomenclature, "two-disease" rule, *Marinari* specifically stated it was adopting a "separate disease" rule in asbestos exposure

actions, to do away with recovery of speculative damages, while preserving a plaintiff's right to recover for more than one asbestos-related disease, if a separate disease developed.

*Daley v. A.W. Chesterton,* 971 A.2d 1258, 1265 (Pa.Super.2009).

The Superior Court further stated: "[w]e see nothing in *Marinari* to limit [Daley]" to one cause of action for a malignant asbestos-related disease and one cause of action for a nonmalignant asbestos-related disease, and opined *"Marinari* permits separate causes of action for distinct diseases due to asbestos exposure." *Id.* at 1265. The Superior Court determined that mesothelioma is a "separate and distinct disease from, and not the natural, predictable progression of, squamous-cell carcinoma," and, therefore, Daley's diagnosis of mesothelioma in 2005 gave rise to a separate cause of action with a new statute of limitations. *Id.* at 1264.

Following the denial of their petition for reargument *en banc* before the Superior Court, U.S. Supply, Duro–Dyne, and Chesterton filed petitions for allowance of appeal with this Court. On May 11, 2010, this Court ordered the matters consolidated and granted review of the following issue: "Did the Superior Court err by permitting suits for more than one malignant disease resulting from the same asbestos exposure under the two-disease rule?" *Daley v. A.W. Chesterton, Inc.,* 606 Pa. 42, 994 A.2d 1078 (2010) (order); *Daley v. A.W. Chesterton, Inc.,* 606 Pa. 43, 994 A.2d 1079 (2010) (order).

 Our standard of review of an order granting or denying a motion for summary judgment is well established:

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our

standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted).

In arguing the Superior Court erred in reversing the trial court's grant of summary judgment in the instant case, Appellants contend *Marinari* created "a limited exception to the unitary cause of action requirement for asbestos litigation" by adopting a "two-disease" rule. Appellants' Brief at 13. Appellants maintain that "[t]he classification of asbestos-related diseases into nonmalignant and malignant categories is at the core of [that rule]." *Id.* at 14. According to Appellants, *Marinari* "permit[s] one suit for a nonmalignant disease and a [single] separate later action for cancer." *Id.* at 15. To the extent the Superior Court held, in the instant case, that *Marinari* does not limit a plaintiff to one suit for a nonmalignant disease and one suit for a malignant disease, Appellants assert that its holding is contrary not only to the Superior Court's own case law, but also to decisions of this Court.

In support of their position, Appellants rely on the Superior Court's decisions in *Bowe, supra,* and *Gatling, supra*—specifically, on the Superior Court's statement in *Bowe* that "the intent of *Marinari* in creating the 'two-disease rule' was to allow for separate actions in asbestos litigation for nonmalignant and malignant diseases," and its finding that any distinction between pulmonary asbestosis, a disease on the inside of the lung, and pleural thickening, a disease on the outside of the lung, was irrelevant, as both diseases are nonmalignant. 806 A.2d at 441. In addition, Appellants note that, in *Gatling,* the Superior Court rejected the plaintiff's argument that, because he had two separate diseases, there were two separate and distinct causes of action, as "pleural asbestosis and pulmonary asbestosis are both nonmalignant diseases. . . . The two disease rule recognizes separate actions for *nonmalignant* and *malignant* diseases." 807 A.2d at 288 (emphasis original).

According to Appellants, the Superior Court's decisions in *Bowe* and *Gatling* demonstrate (1) that *Marinari's* "two-disease" rule permits one action for a malignant disease and one action for a nonmalignant disease, but not "successive lawsuits when both diseases fall within the same category"; and (2) that "[w]hen both injuries fall within the same category of disease," whether one disease is "separate and distinct" from another is irrelevant. Appellants' Brief at 20.

As additional support for their interpretation of *Marinari*, Appellants rely on language from this Court's decisions in *Simmons, supra,* and *Abrams, supra.* Specifically, Appellants note that this Court held in *Simmons:*

> *Marinari* ... permit[s] a plaintiff to commence separate causes of action for separate asbestos related diseases, i.e., *one for a nonmalignant asbestos related disease which had become manifest and another cause of action for the subsequent development of a separate malignant disease such as lung cancer or mesothelioma.*

*Simmons,* 543 Pa. at 674–75, 674 A.2d at 237 (emphasis added).

Appellants further highlight that, in *Abrams,* this Court referred to the separate disease rule as a "two-disease" rule, which, according to Appellants, evinces our intent to adopt the Superior Court's holding in *Marinari* only to the extent it permits a plaintiff to commence *one* suit for a nonmalignant asbestos-related disease and a *second* suit for a malignant asbestos-related disease.[7] Appellants' Brief at 18. Appellants concede this Court's decisions in *Simmons* and *Abrams* did not involve lawsuits for successive malignant diseases, as does the case *sub judice,* but maintain "this does not change the

7. In *Abrams,* we explained:

The *Marinari* court concluded "Pennsylvania must join a majority of jurisdictions which have adopted a 'separate disease' rule in asbestos exposure actions"—the "two disease" rule—and held that a "[p]laintiff's discovery of a nonmalignant, asbestos related lung pathology, whether or not accompanied by clinical symptoms of impaired pulmonary function, does not trigger the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer."

602 Pa. at 637, 981 A.2d at 204–05.

outcome because the two-disease rule recognized and endorsed by this Court leaves no doubt that the asbestos-related malignancy for which a plaintiff can seek recovery is lung cancer *or* mesothelioma, but not both." Appellants' Brief at 18–19 (emphasis original).

Finally, Appellants argue that the Superior Court's interpretation of *Marinari* is rife with practical difficulties. Appellants contend that, in allowing plaintiffs to bring more than one lawsuit for asbestos-related diseases of the same category, the judicial system will be burdened with piece-meal litigation.[8] Indeed, Appellants suggest that residents of other states will seek to benefit by the "expansion" of the two-disease rule by filing suit in Pennsylvania. Appellants further aver that allowing a plaintiff to bring separate lawsuits for separate malignant diseases, such as lung cancer and mesothelioma, will make the determination of an appropriate award of damages more difficult due to an "inability to segregate" the damages for each of the separate diseases. Appellants' Brief at 24. Appellants also argue that allowing separate actions for injuries "in the same disease category" conflicts with principles of *res judicata. Id.* at 25.

Appellees, conversely, challenge Appellants' interpretation of *Marinari,* arguing:

*Marinari* did not hold, as [Appellants] argue in their brief, that an asbestos victim is entitled to file one action for a non-cancerous asbestos condition, and one action for a cancerous asbestos condition. Instead, *Marinari* held that an asbestos victim is not limited to one lawsuit for all potential consequences of his asbestos exposure, but rather is entitled to file a second lawsuit if he develops a distinct and separate asbestos disease. There is no statement in the *Marinari*

8. Appellants acknowledge the representation of Appellees' counsel that, of the more than 3000 asbestos claims he has handled in the last 25 years, Daley is only the second individual who has contracted a second malignant disease based on the same asbestos exposure. Nevertheless, Appellants maintain that, if the Superior Court's holding in this case is affirmed, it will not be limited to cases of successive malignant diseases, but will allow a plaintiff to file suit for each separate and distinct disease, including nonmalignant diseases, related to exposure to asbestos. Appellants' Brief at 23.

decision that an asbestos plaintiff is prohibited from filing a second action for a second separate and distinct malignancy. Appellees' Brief at 10–11. Appellees emphasize the *Marinari* court's pronouncement that "[w]e today join a majority of jurisdictions ... by holding that an asbestos plaintiff may assert, in a second lawsuit, *a claim for a distinct, separate disease*, if and when it develops at a later time." *Marinari*, 612 A.2d at 1028 (emphasis added).

Appellees further contend that the cases cited by Appellants for the proposition that *Marinari* intended to allow a single cause of action for a nonmalignant asbestos-related disease and a single cause of action for a malignant asbestos-related disease are inapplicable, in that those cases "do not involve the fact circumstance where an asbestos plaintiff contracts a second asbestos-related malignancy." Appellees' Brief at 15. Instead, Appellees offer the Superior Court's decision in *McCauley v. Owens–Corning Fiberglas Corp.*, 715 A.2d 1125 (Pa.Super.1998), as support for interpreting *Marinari* as allowing separate causes of action for separate and distinct asbestos-related diseases. In *McCauley*, the court held the plaintiff was not precluded from filing a cause of action for nonmalignant symptomatic pulmonary asbestosis in 1992, despite having failed to file an action for asymptomatic nonmalignant pleural thickening in 1985 (of which the plaintiff was aware at the time), because McCauley's pulmonary asbestosis could "arguably be considered part of a separate and distinct disease which triggered the statute of limitations on a second action." 715 A.2d at 1131.

Appellees also reject the assertion that the Superior Court's decision below, if affirmed, will result in increased litigation, and emphasize they are not suggesting that a plaintiff should be permitted to bring an "endless amount of actions." Appellees' Brief at 17. Rather, they contend:

[c]onsistent with *Marinari*, asbestos victims should be limited to two lawsuits or two causes of action. In the case at bar, Mr. Daley has had only one prior action, and in his first action he recovered compensation for his pulmonary asbestosis and lung cancer. He has now filed a second action for

an entirely different asbestos disease, that is, malignant mesothelioma. This does not present a third action on the part of Mr. Daley, and the plaintiff is not arguing that asbestos victims should be permitted to file more than two causes of action.

*Id.*[9] Finally, Appellees dispute Appellants' contention that the Superior Court's decision below, if left to stand, will promote overcompensation or duplicative damages, or that it conflicts with principles of *res judicata.*

As reflected above, Appellants' interpretation of the Superior Court's holdings in *Marinari*, *Bowe*, and *Gatling*, and of this Court's opinions in *Simmons* and *Abrams*, is based on specific verbiage excerpted from those opinions. Although the particular language on which Appellants rely could, when read in isolation, be viewed as limiting a plaintiff to one cause of action for a malignant asbestos-related disease and one cause of action for a nonmalignant asbestos-related disease, it is apparent from a careful reading of those decisions that their underlying rationale does not favor such a limitation.

Prior to 1992, a plaintiff seeking damages in Pennsylvania for injuries resulting from exposure to asbestos or asbestos-containing products was required to file a single cause of action for all present and future harm within two years [10] of

9. In this regard, Appellees suggest "this Court can take judicial notice of the fact that it is highly unusual for any individual to contract two different forms of cancer during their lifetime." Appellees' Brief at 17.

10. 42 Pa.C.S.A. § 5524(2) (1982) (an action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another must be commenced within two years). In 2001, Section 5524 was amended to include subsection (8), which provided as follows:

(8) An action to recover damages for injury to a person or for the death of a person caused by exposure to asbestos shall be commenced within two years from the date on which the person is informed by a licensed physician that the person has been injured by such exposure or upon the date on which the person knew or in the exercise of reasonable diligence should have known that the person had an injury which was caused by such exposure, whichever date occurs first.

42 Pa.C.S.A. § 5524(8) (2001). Subsection 8 was later deleted by further amendment on November 24, 2004, and replaced with 42 Pa.C.S.A. § 5524.1. However, in *Commonwealth v. Neiman*, 5 A.3d 353

the initial diagnosis of any asbestos-related condition. This rule emanated from the Superior Court's decision in *Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 471 A.2d 493 (1984) (*en banc*), wherein the court held that a plaintiff's claim for pleural thickening, which was filed within two years of the diagnosis thereof, but more than two years after the plaintiff was initially diagnosed with asbestosis, was time-barred under 42 Pa.C.S.A. § 5524(2). The Superior Court in *Cathcart* conceded there are differences between pleural thickening and asbestosis, but nevertheless concluded that a second injury or separate complication arising from an original tortious act did not give rise to a separate cause of action. *Id.* at 507. Thus, under *Cathcart*, a plaintiff had the substantial burden of establishing all future harm that *might* result from the contraction of an asbestos-related disease.

In 1992, however, the law in Pennsylvania with respect to recovery for asbestos-related injuries underwent a sea change. The Superior Court in *Marinari* acknowledged that the rule established in *Cathcart*, "which has generally proven fair and workable in the context of actions for personal injury, has given rise to an unworkable process and a potential for unfair results in the context of asbestos litigation." *Marinari*, 612 A.2d at 1023. The plaintiff in *Marinari* was diagnosed in 1983 with pleural thickening, but, because he was not experiencing breathing problems, did not file a lawsuit at that time. After he was diagnosed with asbestos-related lung cancer in 1987, Marinari commenced an action against several companies seeking damages for his cancer-related injuries. The trial court granted the defendants' motions for summary judgment on the basis that the two-year statute of limitations for Marinari's action began to run in 1983, when he was first

(Pa.Super.2010), the Superior Court determined that Senate Bill 92 of 2004, which addressed multiple subjects, including, *inter alia*, the statute of limitations on asbestos claims, violated the single subject rule and, thus, was unconstitutional. As a result of the court's holding in *Neiman*, it appears there is no specific statutory provision which addresses the statute of limitations for asbestos claims. However, an appeal of the *Neiman* decision is pending with this Court. *See Commonwealth v. Neiman*, 27 A.3d 984 (Pa.2011) (order).

diagnosed with pleural thickening, and that Marinari's 1987 action was, therefore, untimely.

On appeal, an *en banc* panel of the Superior Court reversed the trial court's grant of summary judgment, holding that a plaintiff's knowledge of a nonmalignant, asbestos-related lung condition did not trigger the statute of limitations with regard to an action for a later, separately-diagnosed disease of lung cancer. In so doing, the court reasoned:

> Those jurisdictions which permit more than one action for separate asbestos related injuries have done so in recognition that asbestos exposure does not result in only one disease. The damage to the human body which may result from asbestos exposure does not occur as a seamless progression of a single pathology. Instead, *exposure to asbestos may result in a variety of benign and malignant conditions, each of which may occur at widely divergent times....* One or more [diseases] may occur in any one person at various times because of differing and often prolonged periods between exposure and manifestation of the disease. Thus, the diseases may be discovered at very different points in time.

> The problem in the context of asbestos litigation arises when ... the first manifestation of asbestos exposure is asymptomatic pleural thickening. In the presence of such a subclinical condition, plaintiffs are able to lead normal lives, remaining active with no pain or suffering and without any loss of the use of an organ or disfigurement. Mild or asymptomatic pleural thickening, therefore, may not call for an award of compensatory damages. Nevertheless, plaintiffs in Pennsylvania, once informed of pleural thickening, have been required to act within the period of the applicable statute of limitations to make a claim for an asymptomatic condition and also for any and all predictable later diseases and/or injuries related to asbestos exposure.

*Marinari*, 612 A.2d at 1024–25 (emphasis added, citations and footnote omitted).

The *Marinari* court also recognized that "the strict single action doctrine was relaxed as early as 1982," *id.* at 1025, by the United States Court of Appeals for the District of Columbia in *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111 (D.C.Cir.1982), and quoted the *Wilson* court's opinion at length. In that case, Wilson, who for years was employed as an insulation worker at construction sites, had been diagnosed with "mild asbestosis" in 1973. Although his health rapidly deteriorated after his diagnosis, he took no legal action against the manufacturers of the asbestos products which he regularly handled during his employment. In 1978, Wilson was diagnosed with mesothelioma and died within several months of his diagnosis. Less than one year after his death, Wilson's widow filed a diversity action against several defendants, alleging their products were the cause of her husband's injuries and death.

Defendant Johns–Manville filed a motion for summary judgment, asserting that Wilson had one cause of action for all past, present, and future injuries, and that the cause of action accrued, at the latest, in 1973, when Wilson was diagnosed with asbestosis. The trial court granted the motion and dismissed the complaint. On appeal, the court of appeals reversed, holding that a plaintiff's diagnosis of asbestosis did not necessarily trigger the running of the statute of limitations on all separate and later manifested diseases, such as malignant mesothelioma, which had been caused by the same asbestos exposure.

In reaching its holding, the *Wilson* court recognized a defendant's interest in repose; [11] nonetheless, the court found "a potential defendant's interest in repose is counterbalanced and outweighed by other factors, including evidentiary considerations, securing fair compensation for serious harm, and deterring uneconomical anticipatory lawsuits." *Id.* at 120.

11. Notably, in *Abrams*, this Court held that "no statutory right of repose exists with respect to asbestos cases." 602 Pa. at 649, 981 A.2d at 212. We further concluded that a common law theory of repose "runs contrary to the holdings of *Marinari*, [*Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993)], and *Simmons*." 602 Pa. at 649, 981 A.2d at 212.

With respect to its concern for judicial economy, the court explained:

> Upon diagnosis of an initial illness, such as asbestosis, the injured party may not need or desire judicial relief. Other sources, such as workers' compensation or private insurance, may provide adequate recompense for the initial ailment. If no further disease ensues, the injured party would have no cause to litigate. However, if such a person is told that another, more serious disease may manifest itself later on, and that a remedy in a court will be barred unless an anticipatory action is filed currently, there will be a powerful incentive to go to court, for the consequence of a wait-and-see approach to the commencement of litigation may be too severe to risk. Moreover, a plaintiff's representative in such a case may be motivated to protract and delay once in court so that the full story of his client's condition will be known before the case is set for trial.

*Wilson*, 684 F.2d at 120.

The *Marinari* court also considered that other jurisdictions "have recognized the likelihood of unfairly excessive or inadequate compensation because of the inherently speculative nature of the evidence employed to prove the possibility of future disease," finding the following reasoning by a Florida appellate court particularly persuasive:

> The speculative nature of the prediction of future damages—that a person with asbestosis will someday contract cancer—may lead to several inequitable results. First, the plaintiff who does not contract cancer gets a windfall—cancer damages without cancer. Second, and perhaps worse, an asbestosis plaintiff who is unsuccessful in his efforts to recover risk of cancer damages, but later contracts cancer, has the disease but no damages. Third, even plaintiffs who later contract cancer and who have recovered some amount of risk of cancer damages may emerge with an inequitable award, since the jury, cognizant of the less than one hundred percent chance that the plaintiff will contract cancer, likely will have awarded less than one hundred percent damages. Finally, inequitable awards are more

likely to result from a future damages action simply because the damages cannot be known. If the disease has advanced—or even come into existence—the actual financial needs of the plaintiff can obviously be more accurately assessed.

*Marinari*, 612 A.2d at 1026–27 (quoting *Eagle–Picher Industries, Inc. v. Cox*, 481 So.2d 517, 524 (Fla.Dist.Ct.App.1985)) (footnote and citations omitted).

After considering the decisions in *Wilson* and *Eagle–Picher*, and recognizing the purpose behind the traditional single action rule, which includes preventing delay, limiting expenses, and promoting finality and judicial economy, the *Marinari* court ultimately concluded:

The adjudicative process must ultimately serve the principle that a fair and just resolution of disputes depends upon a search for truth, based on factual, non-speculative evidence (the integrity of the process). Litigation by an injured citizen against another citizen must result in a recovery of adequate compensation by the one and payment by the other of no more than fair and just compensation (the fairness of the result). In latent disease cases, such as the instant case, these principles of fair adjudication are not well served by [the rule that all claims against a defendant arising from a single transaction or occurrence must be asserted in a single action].

\* \* \*

In order to accomplish just results in the resolution of claims for latent asbestos diseases, the rigid rules designed to limit plaintiffs to a single lawsuit must yield. Therefore, today we join a majority of jurisdictions which have responded to this difficult issue by holding that an asbestos plaintiff may assert, in a second lawsuit, a claim for a distinct, separate disease if and when it develops at a later time.

612 A.2d at 1027–28.

Shortly after its decision in *Marinari*, the Superior Court, in *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632

A.2d 880 (1993), amended its position in *Marinari* to the extent it had refused to hold, as a matter of law, that asymptomatic pleural thickening was an insufficient injury to support a cause of action. In or around 1980, Giffear was diagnosed with pleural disease, and was told the disease was irreversible and could lead to cancer. Although he was not experiencing any lung impairment, Giffear filed an action seeking recovery for risk and fear of cancer, mental anguish, and loss of life's pleasures. Following a jury verdict in favor of Giffear, the trial court granted judgment notwithstanding the verdict in favor of the defendants, concluding that asymptomatic pleural thickening was not a cognizable cause of action. Giffear appealed to the Superior Court, which affirmed,[12] holding "asymptomatic pleural thickening does not constitute an injury sufficient to bring about a legal cause of action." 632 A.2d at 886. The *Giffear* court stressed, however, that its holding "in no way abolishes the need for the two disease rule," as its holding applied "*only* to pleural thickening *not* accompanied by physical symptoms.... Any [later] recovery awarded for ... symptomatic pleural thickening would not preclude a later action if cancer were to develop as a result of the asbestos exposure." *Id.* at 888 (emphasis original). The plaintiffs in *Giffear* appealed, and we considered their argument in the consolidated case of *Simmons.*[13]

In affirming the Superior Court's decision in *Giffear,* we stated:

[W]e agree that asymptomatic pleural thickening is not a compensable injury which gives rise to a cause of action. We reach this conclusion not only because we find that no physical injury has been established that necessitates the awarding of damages, but also because, pursuant to *Marinari,* Appellants are not precluded from subsequently com-

---

12. Initially, the trial court's entry of judgment notwithstanding the verdict was reversed by a panel of the Superior Court. However, the defendants were granted reargument *en banc,* and the Superior Court ultimately affirmed the trial court's holding.

13. *Giffear* was consolidated with the appeal in *Murray v. Philadelphia Asbestos Corp.,* 433 Pa.Super. 206, 640 A.2d 446 (1994).

mencing an action for an asbestos related injury when symptoms develop and physiological impairment begins.

543 Pa. at 674, 674 A.2d at 237 (citation and footnote omitted). In *Simmons*, we also adopted the holding in *Marinari:*

Prior to *Marinari*, a single cause of action for all present and future harm as a result of an asbestos related disease accrued at the time when the first signs of the disease were discovered. Thus, to prevent the asbestos claim from being precluded by the statute of limitations, the plaintiff faced the arduous task of having to establish all future harm that may result from the contraction of the asbestos related disease. Although such a rule was workable in a routine personal injury case, it did not bring about just results in cases involving latent diseases which do not surface until years after the initial exposure.

*Marinari* remedied this situation by permitting a plaintiff to commence separate causes of action for separate asbestos related diseases, i.e., one for a nonmalignant asbestos related disease which had become manifest and another cause of action for the subsequent development of a separate malignant disease such as lung cancer or mesothelioma.

543 Pa. at 674–75, 674 A.2d at 237; *see also Abrams*, 602 Pa. at 639, 981 A.2d at 205 (noting that, in *Simmons*, we "implicitly adopted" *Marinari's* separate disease rule, but modified it in several respects).[14]

Following this Court's decision in *Simmons*, the Superior Court addressed the separate disease rule on at least three other occasions. As discussed above, in *McCauley*, the court held the plaintiff was not precluded from filing a cause of action for nonmalignant symptomatic pulmonary asbestosis in 1992, despite having failed to file an action for asymptomatic nonmalignant pleural thickening in 1985 (of which the plaintiff was aware at the time), because McCauley's pulmonary asbes-

14. We further concluded in *Simmons* that "the natural extension of *Marinari* is to preclude an action for asymptomatic pleural thickening since Appellants are permitted to commence an action when the symptoms and physical impairment actually develop." *Id.* at 675, 674 A.2d at 237.

tosis could "arguably be considered part of a separate and distinct disease which triggered the statute of limitations on a second action." 715 A.2d at 1131.

In *Bowe,* one of the plaintiffs, Bruce Mann, filed suit for nonmalignant asbestos-related pulmonary disease. Mann previously had been diagnosed with nonmalignant asbestos-related pleural thickening, but did not file suit on the basis of that diagnosis. The trial court granted summary judgment in favor of the defendant on the ground that Mann's lawsuit was filed outside the statute of limitations, which began to run when Mann was first diagnosed with pleural thickening. On appeal, Mann argued that pulmonary asbestosis is a separate disease from pleural thickening, thus giving rise to a separate cause of action and a new statute of limitations. In rejecting his argument, the Superior Court opined, "the intent of *Marinari* in creating the 'two-disease rule' was to allow for separate actions in asbestos litigation for nonmalignant and malignant diseases," and stated:

> Pulmonary asbestosis is a nonmalignant disease, as is pleural thickening.... While in some cases these may be separate diseases, both are nonmalignant diseases. In his deposition testimony, Mann makes much of the distinction between the damage being on the inside or on the outside of his lungs.... Such distinction is irrelevant as both diseases, and their corresponding manifestations, are nonmalignant.

806 A.2d at 441.

In *Gatling,* the plaintiff filed a lawsuit in 1988 against various defendants, including Uniroyal, Inc., alleging he suffered from symptomatic pleural asbestosis that resulted from exposure to Uniroyal's asbestos products. The jury, however, returned a verdict in favor of the defendants, finding Gatling "did not have the claimed asbestos-related injury and did not have any asbestos-related symptoms." 807 A.2d at 287. In 2000, Gatling was diagnosed with pulmonary asbestosis, and he filed a second complaint against the same defendants named in the 1988 action, again seeking compensation for his injuries. The trial court granted the defendants' motion for

summary judgment on *res judicata* and statute of limitations grounds.

On appeal, the Superior Court affirmed. In rejecting Gatling's argument that, because he had two separate diseases, there were two separate and distinct causes of action, the court noted that "pleural asbestosis and pulmonary asbestosis are both nonmalignant diseases." *Id.* at 288. The court reasoned, "[t]he two-disease rule recognizes separate actions for nonmalignant and malignant diseases. A second claim based on a symptomatic nonmalignant disease is not cognizable. Thus, *res judicata* precludes the second action." *Id.*

Most recently, in *Abrams,* this Court determined that plaintiffs who recovered damages for increased risk and fear of cancer in one lawsuit were not barred on statute of limitations grounds from filing subsequent actions against a new defendant based on an actual diagnosis of cancer. Kenneth Abrams and John Shaw were diagnosed with nonmalignant asbestos-related disease in April 1984 and January 1985, respectively. Within two years of the diagnoses, both men filed suit against various defendants seeking damages for risk and/or fear of cancer. Both lawsuits were settled in 1993, prior to trial. In December 2002, both men were diagnosed with lung cancer, and they subsequently filed lawsuits against various companies, including John Crane, Inc. ("Crane"), which was not a defendant in the prior actions. The trial court granted Crane's motion for summary judgment on the basis that the plaintiffs were required to bring all claims for existing nonmalignant conditions and predictable malignant diseases, including cancer, within two years of their initial diagnosis of an asbestos-related disease.

The plaintiffs appealed, and, ultimately, the Superior Court, in an *en banc* decision, affirmed the grant of summary judgment, concluding the risk of cancer claims advanced by the plaintiffs in their prior lawsuits "were premised on the assertion that Mr. Shaw and Mr. Abrams would contract cancer in the future as a result of occupational exposure to asbestos," and, thus "pertained to the same malignant asbestos-related disease for which [they] now seek to recover damages."

*Abrams v. Pneumo Abex Corp.*, 939 A.2d 388, 394 (Pa.Super.2007) (*en banc*). On appeal, this Court reversed. Specifically, we rejected "the Superior Court's conclusion that Appellants' present claims for damages for lung cancer are identical to their previously-litigated risk of cancer claims, and thus had to have been raised at the same time as their risk of cancer claims. Cancer and non-cancer diseases clearly give rise to separate claims." 602 Pa. at 647, 981 A.2d at 210–11 (citing *McNeil v. Owens–Corning Fiberglas Corp.*, 545 Pa. 209, 213, 680 A.2d 1145, 1148 (1996), and *Marinari*, supra).

■ A thoughtful reading of *Marinari*, *Simmons*, and the other cases discussed above, reveals that the decision to allow a plaintiff to file one cause action for a nonmalignant asbestos-related disease, and a subsequent cause of action for a malignant asbestos-related disease, arose from a recognition that requiring a plaintiff to seek recovery for all present and future asbestos-related diseases, including malignant and nonmalignant diseases, upon first experiencing symptoms of any asbestos-related disease, is likely to result in anticipatory lawsuits, protracted litigation, evidentiary hurdles, speculative damages, and excessive or inadequate compensation.

While the separate disease rule initially developed from, and has since been applied in, cases involving a cause of action for a nonmalignant disease, followed by a cause of action for a malignant disease, the concerns the rule was designed to address are not limited to situations where a plaintiff suffers one nonmalignant asbestos-related disease and one malignant asbestos-related disease. Indeed, the same difficulties that led the *Marinari* court to conclude that the single cause of action rule was unworkable in situations where an asbestos plaintiff is first diagnosed with a nonmalignant disease, and subsequently diagnosed with a malignant disease, are equally present in situations where an asbestos plaintiff is diagnosed with a malignant disease, and later diagnosed with a separate and distinct malignant disease caused by the same asbestos exposure.

For example, with regard to mesothelioma, the estimated latency period for mesothelioma is 30 to 50 years,[15] whereas the estimated latency period for asbestosis and most lung cancers is 10 to 20 years.[16] Thus, it is unlikely a plaintiff would be diagnosed with mesothelioma until long after he had been diagnosed with, and the statute of limitations had expired for, lung cancer. In addition, mesothelioma is often difficult to diagnose, due to nonspecific early symptoms [17] and the lengthy latency period. As the California Supreme Court recognized in *Hamilton v. Asbestos Corp., Ltd.*, 22 Cal.4th 1127, 95 Cal.Rptr.2d 701, 998 P.2d 403, 407 (2000), "malignant mesothelioma is a very rare cancer, even among persons exposed to asbestos; no one can predict whether or when such a person will develop mesothelioma." Requiring a plaintiff to seek damages for a potential future diagnosis of mesothelioma at the time he is diagnosed with lung cancer not only imposes nearly insurmountable evidentiary hurdles on the plaintiff, but also may subject a defendant to payment of damages for a serious disease which a vast majority of plaintiffs will not actually develop.

In view of these circumstances, we conclude that a plaintiff who is diagnosed with a malignant disease, and later diagnosed with a separate and distinct malignant disease caused by the same asbestos exposure, may benefit from the separate

15. *See, e.g.,* Michael J. Sarg & Ann D. Gross, *The Cancer Dictionary* 196 (3rd ed.2007) (average latency period for mesothelioma is 30–40 years); *Cancer Sourcebook, supra* note 4, at 337 (average latency period for mesothelioma is 30 to 50 years); Center for Disease Control and Prevention, Agency for Toxic Substances & Disease Registry, Asbestos Health Effects, http://www.atsdr.cdc.gov/asbsetos/asbestos/health_effects (last visited Sept. 1, 2011) (hereinafter "Asbestos Health Effects") (diagnosis of mesothelioma commonly is 30 years or more after time of initial exposure).

16. *See, e.g.,* Asbestos Health Effects, supra note 15 (most cases of asbestosis occur 10 to 20 years after exposure); American Cancer Society, Learn About Cancer, http://www.cancer.org/Cancer/Cancer Causes/OtherCarcinogens/IntheWorkplace/asbestos (most cases of asbestos-related lung cancer occur at least 15 years after exposure).

17. Symptoms of mesothelioma include shortness of breath and chest pain due to pleural effusion. *See* Asbestos–Related Lung Diseases, *supra* note 2.

disease rule.[18] Indeed, we agree with the Superior Court in the instant case that the limitation imposed by the trial court "is just another form of the very mischief *Marinari* was designed to abolish with its separate disease rule." *Daley*, 971 A.2d at 1265.[19]

■ The burden of establishing that a particular asbestos-related malignant disease is "separate and distinct" from another must be borne by the plaintiff. In this regard, we note that relevant factors may include evidence that the diseases: developed by different mechanisms; originated in different tissue or organs;[20] affected different tissue or organs; manifested themselves at different times and by different symptoms; progressed at different rates; and carried different outcomes.

To the extent Appellants assert that allowing more than one lawsuit for separate and distinct asbestos-related malignancies will overburden the courts and promote overcompensation or duplicate damages, we do not agree. As discussed above, mesothelioma is an extremely rare disease; it is estimated that between 1000 and 2000 cases are diagnosed in the United States each year.[21] As also noted above, studies have not

18. We leave for another day a discussion of whether the reasons which support our decision to allow a plaintiff to bring separate actions for separate and distinct malignant asbestos-related diseases also support allowing more than one cause of action for separate and distinct nonmalignant asbestos-related diseases.

19. To the extent *Bowe* and *Gatling* suggest that the separate disease rule does not allow a plaintiff who filed suit for one asbestos-related malignant disease to later file a separate cause of action for a separate and distinct asbestos-related malignant disease, those decisions are disapproved.

20. Regardless of where a particular type of cancer may spread, it is always named for the location where it originated. For example, lung cancer which has spread, or metastasized, to the liver is still called lung cancer. *See* American Cancer Society, Learn About Cancer, Malignant Mesothelioma, http://www.cancer.org/Cancer/MalignantMesothelioma/ DetailedGuide/malignant-mesothelioma.

21. *See* Sarg & Gross, *supra* note 16, at 196 (between 1000 and 1500 cases of mesothelioma are diagnosed annually in the United States); *Cancer Sourcebook, supra* note 4, at 336 (approximately 2000 new cases of mesothelioma diagnosed each year in the United States). *See also* Mustacchi, *supra* note 3, at 283 ("As regards mesotheliomas, these

shown a strong or consistent link between asbestos exposure and non-respiratory cancers. Thus, the likelihood of a plaintiff contracting two separate and distinct asbestos-related malignancies appears to be remote.

■ Finally, we reject Appellants' argument that the Superior Court's holding below violates the doctrine of *res judicata*. The doctrine of *res judicata* will preclude an action where the former and latter suits possess the following common elements: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued. *In the Matter of Iulo*, 564 Pa. 205, 210, 766 A.2d 335, 337 (2001).[22] Because we have concluded that Appellees' cause of action for mesothelioma is distinct from his prior cause of action for lung cancer, the doctrine of *res judicata* does not apply.[23, 24]

malignancies are so rare that, clinically speaking, any case occurring after a well attested and substantial asbestos exposure is commonly accepted as being caused by that exposure." (footnote omitted)).

22. The doctrine of *res judicata* is distinct from the concept of collateral estoppel. Collateral estoppel applies when the following four conditions are present: (1) the issue decided in a prior adjudication is identical to the one presented in the current action; (2) there was a final judgment on the merits in the prior action; (3) the party to the current action was a party or in privity with a party to the prior adjudication; and (4) the party against whom a claim of collateral estoppel is asserted had a full and fair opportunity to litigate the issue in question in the prior adjudication. *Iulo*, 564 Pa. at 210, 766 A.2d at 337. Appellants do not argue that collateral estoppel applies in the instant case.

23. The doctrine of *res judicata* also is inapplicable in the instant case because (1) Appellants were not named defendants in Appellees' 1990 Action, and, therefore, there is no identity of persons and parties to the action; and (2) Appellees settled their 1990 action instead of proceeding to trial.

24. Appellants rely on the Superior Court's decision in *Gatling, supra*, for the proposition that, even if there are two separate and distinct diseases, if both fall into the same category, i.e., both are malignant or both are nonmalignant, a plaintiff may not file a separate action for each disease. In *Gatling*, however, the trial court expressly rejected the plaintiff's argument that his actions were based on separate and distinct symptomatic nonmalignant diseases. By contrast, the Superior Court herein determined that mesothelioma is a separate and distinct disease

■ Accordingly, for all of the reasons discussed above, we hold that the separate disease rule, as adopted in Pennsylvania, allows a plaintiff to file an action for a malignant asbestos-related disease, even if he previously filed an action for a different malignant asbestos-related disease, provided the second or subsequent action is based on a separate and distinct disease which was not known to plaintiff at the time of his first action, and is filed within the applicable statute of limitations period. Accordingly, we affirm the Superior Court's order reversing the trial court's grant of summary judgment in favor of Appellants, and we remand the matter for further proceedings.[25]

Order affirmed.

Chief Justice CASTILLE and Justices SAYLOR, BAER and McCAFFERY join the opinion.

Justice EAKIN files a concurring opinion in which Justice BAER joins.

Justice ORIE MELVIN files a dissenting opinion.

Justice EAKIN, concurring.

I join the Majority's holding that the separate disease rule permits a plaintiff to file an action for a malignant asbestos-related disease, even if he previously filed an action for a different malignant asbestos-related disease, provided the second action is based on a separate, distinct disease not known to the plaintiff at the time of the first action. I write separately to express my view that the damages recoverable in the second action for the second malignant disease must also be separate and distinct from those recovered in the first action. While two lawsuits are permitted under the rule, two recoveries for identical damage resulting from each disease are not. A plaintiff must be able to establish the second

from lung cancer, and Appellants do not dispute that conclusion. Thus, we find Appellants' reliance on *Gatling* misplaced.

**25.** As noted above, *supra* note 5, the trial court dismissed Appellants' motion for summary judgment based on lack of product identification as moot. We offer no opinion on the propriety of this ruling.

disease caused damage that is distinct from that which was alleged in the first action. A second lawsuit cannot be used as a vehicle to recover damages he may have been unable to prove in the first one.

In all other respects, I join the Majority's decision.

Justice BAER joins this concurring opinion.

Justice ORIE MELVIN, dissenting.

I respectfully dissent. Based upon my reading of pertinent case law, including *Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992) (*en banc*), I believe the trial court correctly determined that Appellants were entitled to summary judgment in this scenario. Hence, I would reverse the order of the Superior Court.

In their brief, Appellants accurately point out that *Marinari* has always been interpreted as permitting one action for nonmalignant diseases and one action for malignant diseases; no Pennsylvania court has ever afforded an asbestos plaintiff an opportunity to file multiple lawsuits for different types of malignancies. As noted by the Majority, the *Marinari* Court sought to rectify the problem with the original rule that required plaintiffs to sue for all present and future harm caused by asbestos exposure when the first nonmalignant disease was detected: plaintiffs were receiving speculative damage awards that amounted to a windfall if the plaintiff failed to develop a malignant disease such as cancer or mesothelioma. Accordingly, the *Marinari* Court drew a critical distinction between a claim for a symptomatic nonmalignant disease, which must be pursued within two years of the diagnosis, and a subsequent claim for a malignant disease that has not yet appeared. If the plaintiff later develops cancer or mesothelioma due to asbestos exposure, he now has the ability to institute a second action to recover additional damages for that injury on the rationale that malignant diseases are separate and distinct from nonmalignant diseases.

The Majority acknowledges that "particular language" from *Marinari* and subsequent decisions indicates that plaintiffs

are limited to "one cause of action for a malignant asbestos-related disease and one cause of action for a nonmalignant asbestos-related disease," yet it concludes that those cases actually permit asbestos plaintiffs to institute a new lawsuit each time they are diagnosed with a separate and distinct malignant disease. Majority opinion at 344–346, 37 A.3d at 1181–82. I do not follow this logic, nor do I subscribe to the view that it is unjust to deny recovery for a second malignant disease attributable to the same exposure that caused the first malignancy.

In the instant case, the record establishes that Appellees sued numerous companies in 1990 after Mr. Daley was diagnosed with pulmonary asbestosis and lung cancer stemming from occupational exposure to asbestos fibers. Neither of the appellants herein was involved in that action, which ended in 1994 with a monetary settlement. In 2005, Mr. Daley was diagnosed with a different malignant condition attributable to the same exposure, and he initiated a second action against Appellants and eleven other companies. The Majority views the second lawsuit as a necessary means of preventing "the very mischief *Marinari* was designed to abolish with its separate disease rule." Majority opinion at 358, 37 A.3d at 1189 (quoting *Daley v. A.W. Chesterton, Inc.*, 971 A.2d 1258, 1265 (Pa.Super.2009)). I disagree with that assessment.

The so-called "two-disease rule" promulgated in *Marinari* was designed to abolish speculative damage awards for malignant diseases that asbestos plaintiffs might never develop; thus, following *Marinari*, plaintiffs were no longer permitted to recover damages for "risk and fear of cancer." *See, e.g., Abrams v. Pneumo Abex Corp.*, 939 A.2d 388, 392 (Pa.Super.2007) (*en banc*) (citing *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996)). Under the new approach, a plaintiff who opted to sue following the initial diagnosis of a symptomatic, nonmalignant disease could bring a second action if he subsequently developed a malignant disease. *See Simmons, supra* at 237 (observing that *Marinari* resolved the problem of awarding damages for risk of future harm to asbestos

plaintiffs "by permitting a plaintiff to commence separate causes of action for separate asbestos related diseases, *i.e.,* one for a nonmalignant asbestos related disease which had become manifest and another cause of action for the subsequent development of a separate malignant disease such as lung cancer or mesothelioma"). Appellees achieved the underlying objective of the two-disease rule in 1994 when they recovered damages for a nonmalignant condition (pulmonary asbestosis) and a malignant condition (lung cancer) caused by occupational exposure to asbestos-containing products. Based on their present claims, which are predicated on the same events that prompted the 1994 settlement, it is clear that Appellees could have sued Appellants in 1990 but failed to do so. Unlike the Majority, which makes no mention of this fact and concludes that Appellees should be allowed to proceed because lung cancer and mesothelioma have different latency periods, I agree with the trial court that Appellees are no longer entitled to seek compensation for asbestos-related injuries.

Contrary to the Majority view, the two-disease rule was not designed to toll the statute of limitations until every conceivable asbestos-related disease has been detected. I would accord an element of finality to asbestos litigation in this Commonwealth by holding that Appellees' failure to sue Appellants for a previously-diagnosed malignant condition caused by the same exposure precludes their present claims. Thus, I dissent.