**Joseph S. BUBBA, Appellant**

v.

**COMMONWEALTH of Pennsylvania, Pennsylvania DEPARTMENT OF TRANSPORTATION, Albany Township and Lori J. Murray.**

**Lori J. Murray**

v.

**Commonwealth of Pennsylvania, Pennsylvania Department of Transportation, and Albany Township.**

Commonwealth Court of Pennsylvania.

Argued Dec. 12, 2012.

Decided Jan. 8, 2013.

Reargument Denied Feb. 28, 2013.

Publication Ordered March 18, 2013.

Gary S. Figore, Easton, for appellant.

Claudia M. Tesoro, Senior Deputy Attorney General, Philadelphia, for respondent Department of Transportation.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and COLINS, Senior Judge.

OPINION BY Judge McCULLOUGH.

Joseph S. Bubba (Bubba) appeals from the Berks County Court of Common Pleas' (trial court) May 18, 2012 order granting summary judgment in favor of the Commonwealth of Pennsylvania, Department of Transportation (DOT) on the basis of sovereign immunity. There are two issues before this Court: (1) whether DOT had a duty to maintain the shoulder immediately abutting the roadway so that it was even

with the highway, and (2) whether there was evidence establishing that a dangerous drop-off condition existed from the highway to the shoulder. We affirm.

On May 10, 1999, Bubba was a front-seat passenger in a vehicle operated by Lori J. Murray (Murray) proceeding northbound on State Route 737 (Rt.737) in Albany Township (Township), Berks County. Rt. 737 is a state-designated highway under DOT's jurisdiction. After seeing what she believed to be an animal in the roadway, Murray steered the vehicle to the right in order to avoid it. As she did so, the vehicle's passenger-side tires dropped off the highway where the road abuts the dirt and gravel berm/shoulder. Murray tried to steer to the left in order to get the right tires back onto the highway and, as she did so, the vehicle jumped up from the alleged 2 to 3–inch drop-off, crossed Rt. 737 to the other side, over-turned, struck a utility pole and crashed into a house. Murray and Bubba were injured. (Reproduced Record (R.R.) at 82a–89a).

In 2001, Bubba filed a civil action in the trial court seeking damages against DOT, the Township and Murray.[1] Bubba contended that DOT permitted a dangerous condition to exist along Rt. 737, in allowing the edge of the traveled portion of the roadway to deteriorate and be of sufficient difference in elevation and steep slope to the berm/shoulder immediately adjacent to it, resulting in the accident and his injuries. DOT filed an answer and new matter with cross-claims raising, *inter alia,* a sovereign immunity defense. Discovery was conducted.

In September 2006, DOT filed a motion for summary judgment asserting that there was no evidence of a drop-off condition in the area of the accident. On November 30, 2006, the trial court denied DOT's motion. DOT filed an amended motion for summary judgment averring that since the original motion was filed, *Lambert v. Katz,* 8 A.3d 409 (Pa.Cmwlth. 2010), significantly clarified issues relevant to this case.[2] Bubba opposed DOT's amended motion. After a hearing and argument, the trial court granted DOT's amended summary judgment motion, and authorized an immediate appeal to facilitate resolution of the entire case. Bubba appealed to this Court.[3] Bubba's claims against the Township and Murray are still pending.

Bubba argues that the trial court erred in granting the summary judgment motion. Specifically, Bubba contends that DOT is not entitled to sovereign immunity because

---

1. Murray filed a separate lawsuit against DOT and the Township. The two cases were consolidated and litigated together for nearly 10 years. After summary judgment was entered in DOT's favor, Murray discontinued her portion of the case.

2. In *Lambert,* this Court held that: (1) allegedly out-dated guardrails and DOT's failure to maintain them did not create a dangerous condition on Commonwealth real estate, so as to come within the real estate exception to sovereign immunity; (2) DOT had no duty to widen the shoulder; and (3) the shoulder that was less than five feet wide was not a dangerous condition of real estate, thus, it was not a basis for waiving sovereign immunity. *Id.*

3. "Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion." *Daley v. A.W. Chesterton, Inc.,* 614 Pa. 335, 341–42, 37 A.3d 1175, 1179 (2012) (quoting *Pappas v. Asbel,* 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001)). The appellate standard of review is de novo when a reviewing court considers questions of law. *Weaver v. Lancaster Newspapers, Inc.,* 592 Pa. 458, 926 A.2d 899 (2007).

DOT had a duty to maintain the shoulder immediately abutting the roadway so that it was even with the highway. We disagree.

The Pennsylvania Supreme Court has held:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

*Daley v. A.W. Chesterton, Inc.*, 614 Pa. 335, 341, 37 A.3d 1175, 1179 (2012) (quoting *Pappas v. Asbel*, 564 Pa. 407, 418, 768 A.2d 1089, 1095 (2001) (citations omitted)).

■ "DOT is an administrative agency of the Commonwealth and a 'Commonwealth party' pursuant to section 8501 of the Judicial Code, 42 Pa.C.S. § 8501. Commonwealth agencies, including DOT, are generally immune from tort liability pursuant to section 8521(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8521(a)." *Cowell v. Dep't of Transp.*, 883 A.2d 705, 708 (Pa.Cmwlth.2005). Thus, sovereign immunity is available to DOT as a defense in all actions, except where the General Assembly has expressly waived it. *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995).

> By way of exception to the general rule of sovereign immunity, section 8522(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8522(a), provides that liability may be imposed against Commonwealth parties for damages arising out of a negligent act where: (1) **damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a nonimmune** entity; and (2) the injury caused by the negligent act of a Commonwealth party falls within one of the nine exceptions to sovereign immunity enumerated in 42 Pa.C.S. § 8522(b).

*Cowell*, 883 A.2d at 708 (emphasis added).

■ "[A] plaintiff seeking to prevail in a negligence action against the Commonwealth must demonstrate that [his] claim is one that, if proven, would satisfy the common law requirements for a negligence claim and that one of the exceptions to sovereign immunity applies." *Lambert*, 8 A.3d at 417.

> [I]n order to prevail in a negligence action under common law, the plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages.

*Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa.Cmwlth.2011). "The question of whether a duty exists is purely a question of law." *Id.*

Here, Bubba contends that DOT had a duty to maintain the berm/shoulder immediately abutting the roadway. However, case law supports the trial court's determination that DOT owed no duty to Bubba. In *Dean v. Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000), the Pennsylvania Supreme Court addressed a similar issue. In that case, a vehicle fishtailed in snow, left the roadway, traveled down an embankment, and overturned. The plaintiff passenger alleged that DOT was negligent in failing to install a guardrail, and for failing to properly design, construct and maintain a safe highway. DOT filed a motion for summary judgment asserting sovereign immunity. As to DOT's duty, the Court stated, "[t]he corresponding duty of care a Commonwealth

agency owes to those using its real estate, is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Dean*, 561 Pa. at 510, 751 A.2d at 1133–34 (quoting *Snyder v. Harmon*, 522 Pa. 424, 434–35, 562 A.2d 307, 312 (1989)).

Following *Dean*, numerous other cases further clarified DOT's duty to the public. In *Lambert*, three people died when the vehicle they were riding in left the roadway, struck guard cables and posts, then struck a tree and descended an embankment. In the civil actions that followed, the plaintiffs contended that DOT, *inter alia*, "[f]ail[ed] to design and maintain the shoulder in a safe manner that would permit a driver to recover from a skid or loss of control...." *Lambert*, 8 A.3d at 412. Examining *Dean*, this Court determined that DOT did not have a duty to make the roadway shoulder wider in anticipation that vehicles might lose control and use the shoulder to regain control, because shoulders were not intended for vehicular travel.

In *Brown v. Department of Transportation*, 11 A.3d 1054 (Pa.Cmwlth.2011), in considering whether DOT owed a duty to install rumble strips on the highway, this Court discussed the *Dean* decision, noting:

> [T]he [Supreme Court] concluded that DOT does not have a duty to install guardrails because the absence of guardrails does not render the highway unsafe for its intended use. The same analysis applies to rumble strips. Rumble strips, like guardrails, are safety features that may reduce the injuries caused when a car drifts off the traveled roadway, but the *absence* of such safety features does not make the highway unsafe for its intended use and does not, in and of itself, *cause* accidents to occur. *Id.* In *Dean*, the reason the vehicle left the

road was that it slid on the snow, not that there was no guardrail. Similarly, here, the reason [the] car left the road was that [the driver] fell asleep while he was driving it, not that there were no rumble strips to wake him up. We therefore conclude that DOT did not have a duty to install rumble strips.

*Id.* at 1057 (footnotes omitted).

■ Finally, in *Quinones v. Department of Transportation*, 45 A.3d 467 (Pa. Cmwlth.2012), this Court held that DOT had no duty to erect a barrier to prevent vehicles from crossing the grassy median and striking oncoming vehicles because the lack of such barrier did not render the highway unsafe for travel on the roadway. The driver's conduct, rather than a lack of median, caused that accident. Case law makes it clear that, in this case, DOT had no duty to construct and maintain a shoulder even with the highway in order to prevent a drop-off. The shoulder outside the white fog line did not "render the highway unsafe for the purposes for which it was intended, i.e., travel on the roadway." *Dean*, 561 Pa. at 511, 751 A.2d at 1134. Adhering to *Dean* and its progeny, as we must, we similarly conclude that the drop-off did not cause Bubba's injuries, Murray's lack of control of her vehicle did when she swerved to avoid the animal in the roadway. The shoulder is not intended for vehicular travel and, accordingly, DOT owed no duty to design, construct and maintain the shoulder drop-off.

Because Bubba failed to establish that DOT had a duty and breached it, he cannot make a case against DOT for negligence. Thus, Bubba cannot satisfy the threshold requirement that damages would be recoverable if DOT was not entitled to sovereign immunity. *Cowell.* Without a viable negligence claim, this Court need not address whether the evidence established that a dangerous drop-off condition

existed, such that the real estate exception to sovereign immunity applied. *Lambert.*

Examining the record in the light most favorable to DOT, the trial court properly determined that there are no genuine issues of material fact, and DOT was entitled to judgment as a matter of law.

Based upon the foregoing, the trial court's order is affirmed.

### ORDER

AND NOW, this 8th day of January, 2013, the Berks County Court of Common Pleas' May 18, 2012 order is affirmed.