Susan **FAGAN** and Michael P. Fagan, individually and as Administrators of the Estate of Michael J. Fagan, deceased, Appellants

v.

**DEPARTMENT OF TRANSPORTATION OF the COMMONWEALTH of Pennsylvania** and Margie A. Anderson, Administratrix of the Estate of Justin Glenn Martin, deceased.

Commonwealth Court of Pennsylvania.

Argued Feb. 13, 2008.
Decided April 15, 2008.

Gretchen E. Moore, Pittsburgh, for appellants.

Kemal Alexander Mericli, Sr. Deputy Attorney General, Pittsburgh, for appellee, Department of Transportation.

Before: LEADBETTER, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this case we must again decide whether the Pennsylvania Department of Transportation (PennDOT) can be liable for fatal injuries incurred when a vehicle leaves the roadway. The Court of Common Pleas of Cambria County (trial court) determined PennDOT could not be liable here, and it granted summary judgment. We affirm.

For current purposes, there is no dispute over the facts of this tragic accident that occurred at about 1:20 a.m. on August 7, 2002, on William Penn Avenue, State Route 3037. Michael J. Fagan, was a passenger in a car driven by Justin Glenn Martin. For reasons that all parties agree are unknown, the northbound vehicle departed from the pavement in the area of a curve to the left. The vehicle strayed to the right, over the fog line, crossing over a gravel shoulder. The Plaintiffs offered to prove that the vehicle started to slide, brushed against a hedgerow, and knocked down flexible delineator posts. Immediately thereafter, the vehicle ramped a turned-down guardrail terminal, causing it to become airborne. It struck a utility pole, two trees, and rolled over. Report of Joseph B. Muldoon, P.E., at 2, Reproduced Record (R.R.) at 50a. Both occupants were fatally injured.

The passenger's parents, as Administrators of his estate, brought suit against PennDOT. They alleged negligence, primarily related to the guardrail. PennDOT joined the driver's estate as an additional defendant.

Thereafter, PennDOT sought summary judgment. Its two main arguments invoked immunity and the plaintiffs' failure to establish causation necessary for a negligence action.

Factually, the plaintiffs submitted the expert's report previously referenced. Through this report they offered expert opinion that guardrails abutting the shoulders must be designed and maintained so as to be acceptably crashworthy, and that the turned-down guardrail terminal should have been supplanted with a crashworthy end treatment before the accident in question. Report of Joseph B. Muldoon, P.E., at 5, R.R. at 53a. Plaintiffs also offered to prove by expert opinion that PennDOT has a responsibility to design and maintain

roadway shoulders for safe passage of motor vehicles, and that the difference between the slope of the roadway and the slope of the shoulder, in combination with the gravel surface of the shoulder, was a dangerous condition which triggered loss of control over the vehicle.[1] *Id.* The expert offered no opinion as to the cause of the vehicle leaving the pavement.

Legally, the plaintiffs acknowledged several recent decisions of this Court which support a conclusion that PennDOT is immune. They argued, however, that those decisions strayed from Supreme Court guidance, and they urged a strict view of the Supreme Court precedent which would allow their case to go forward. As to causation, they argued that the cause of damages was not the vehicle leaving the roadway but rather the vehicle becoming airborne. Thus, they need not prove why the vehicle left the roadway.

Resolving both these issues in favor of PennDOT, the trial court granted summary judgment. Plaintiffs appealed here.

This Court's standard of review of a grant of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Martinowski v. Commonwealth, Dep't of Transp.*, 916 A.2d 717 (Pa. Cmwlth.2006), *appeal denied*, 594 Pa. 682, 932 A.2d 1290 (2007). The evidence shall be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Id.* Our scope of review is plenary. *Scalice v. Pa. Employees Benefit Trust Fund*, 584 Pa. 161, 883 A.2d 429 (2005).

On appeal, Plaintiffs advance the same arguments as before the trial court. In particular, they argue against immunity for PennDOT here and in favor of a waiver of immunity for Commonwealth real estate and highways set forth in what is commonly known as the Sovereign Immunity Act, 42 Pa.C.S. § 8522(b)(4).[2] Plaintiffs urge a

---

1. The expert opinions were as follows:
    To a reasonable degree of engineering certainty, it is my opinion that:
    1. The graded, useable shoulder area of any given stretch of highway is intended for vehicle travel thereon as well as for other users (pedestrians and bicycles).
    2. Accordingly, PennDOT has a duty to design, construct and maintain the shoulder for the safe passage of motor vehicles and other users.
    3. Any guardrail located within or abutting the graded, useable portion of the shoulder must be designed, constructed and maintained so as to be acceptably crashworthy.
    4. The sharp break in cross slopes between the superelevated northbound lane and the adjacent shoulder in combination with its gravelly surface constituted a dangerous condition that triggered the loss of control of the host Ford Escort.
    5. The turned-down guardrail terminal located within the shoulder—a feature that has long been known to vault, roll and channel vehicles to an area of hazard as it

did in the Fagan crash, should have been supplanted with a crashworthy end treatment well before the accident.
    6. Had such reasonable safety measures been taken so as to eliminate the aforementioned dangerous conditions, the Fagan accident would have been prevented or substantially mitigated.
    In short, failure on the part of the Commonwealth to implement reasonable safety measures within a portion of the highway intended for vehicular travel was a factual cause of this foreseeable accident.
    Report of Joseph B. Muldoon, P.E., at 5, R.R. at 53a.

2. Section 8522 of the Judicial Code, 42 Pa. C.S. § 8522 provides in pertinent part:
    (a) **Liability imposed.**—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to

narrow reading of our Supreme Court's decision in *Dean v. Commonwealth, Department of Transportation*, 561 Pa. 503, 751 A.2d 1130 (2000), limited to the facts in that case, the absence of a guardrail. Plaintiffs complain that subsequent Commonwealth Court decisions in *Martinowski* (defective guardrail) and *Svege v. Interstate Safety Service, Inc.*, 862 A.2d 752 (Pa.Cmwlth.2004) (defective guardrail), improperly extended the Supreme Court's holding.

■ Plaintiffs urge a different analysis, based on the intended use of the Commonwealth real estate. Here, they assert the intended use of the shoulder is for vehicular traffic, and the intended use of a guardrail is to be impacted by vehicles. Because they offered to prove both were unreasonably dangerous for those intended uses, their case is different and should be allowed to proceed.

Regarding proof of causation, Plaintiffs quote a portion of the statute waiving immunity "for damages caused by ... [a] dangerous condition of Commonwealth agency real estate...." 42 Pa.C.S. § 8522(b)(4). Because they will offer expert opinion that the guardrail and shoulder were dangerous for their intended uses and that these conditions caused the injuries, they ask that their cause be submitted to a jury. They contend that they will offer proof of how the vehicle came into contact with the guardrail. Under the theory of concurrent causation, they need not prove why the vehicle left the pavement.

■ The Sovereign Immunity Act provides that sovereign immunity is only waived for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity. 42 Pa.C.S. § 8522(a). In the context of a common law negligence claim against PennDOT at the summary judgment stage, a plaintiff must offer proof that: 1) there is a duty recognized by law which requires the actor to conform to a standard; 2) there is a failure of the actor to conform to that standard; 3) there is a causal connection between the conduct and the resulting injury; and 4) there is actual loss or damage to the interests of another. *See Martinowski.*

■ In order for a Commonwealth party such as PennDOT to be found liable, a plaintiff must also establish that the cause of action falls under one of the specifically enumerated exceptions to immunity. 42 Pa.C.S. § 8522(b). Because of the clear intent to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed. *Dean.*

limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

**(b) Acts which may impose liability.**—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

\* \* \*

**(4) Commonwealth real estate, highways and sidewalks.**—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, lease-holds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [relating to potholes and other dangerous conditions of highways created by natural elements].

In two companion cases, our Supreme Court held the absence of a guardrail was not a dangerous condition of a roadway for which immunity was waived either for the Commonwealth or for local government. *Dean,* 561 Pa. at 512, 751 A.2d at 1134–35;[3] *Lockwood v. City of Pittsburgh,* 561 Pa. 515, 521, 751 A.2d 1136, 1139–40 (2000).[4] The Court concluded a contrary holding could expose the government to unlimited liability, a result clearly not intended by the legislature in enacting the immunity statute. *Dean,* 561 Pa. at 512, 751 A.2d at 1134, n. 9. Also in *Dean,* the Court noted the legislature can correct any misinterpretation of immunity statutes by amending the law so as to explicitly waive immunity for dangerous conditions of guardrails. *Id.* at 512, 751 A.2d at 1134.

Following those cases, this Court held that where a guardrail existed, the failure to design it differently or the failure to maintain it were not dangerous conditions of roadways for which immunity was waived either for the Commonwealth or for local government. *Simko v. County of Allegheny,* 869 A.2d 571 (Pa.Cmwlth.2005) (immunity of local agency), *appeal denied,* 587 Pa. 703, 897 A.2d 462 (2006); *Svege* (immunity of Commonwealth agency). We also noted that the General Assembly

failed to change the immunity statutes to correct any misinterpretation, despite the Supreme Court's invitation to do so. *Simko.*

These decisions are consistent with the direction that exceptions to immunity are to be narrowly construed. *Dean; Simko.* Further, it would be jurisprudentially unsound and in violation of the fundamental principle of *stare decisis* for this Court to unsettle an area of law which we settled recently. *See Gardner v. Consol. Rail Corp.,* 524 Pa. 445, 573 A.2d 1016 (1990). Accordingly, we discern no error in the grant of summary judgment based on immunity from suit regarding the design and maintenance of the guardrail.

As to the condition of the shoulder, however, the same clear holdings on immunity are not present. Nevertheless, a recent decision of this Court guides our resolution and commands the conclusion that no error was present in the grant of summary judgment on a different theory.

In *Martinowski,* this Court addressed the elements of a negligence claim where a vehicle left the paved highway without explanation and struck a PennDOT guardrail. After a review of numerous cases,[5]

---

3. In *Dean,* the passenger was in a vehicle that fishtailed on a snow-covered roadway, traveled off the road over a steep embankment, overturned and caused the passenger serious injuries. The Court decided the absence of the guardrail did not render the roadway unsafe for its intended purpose—travel on the road. The Court decided the legislature did not intend to impose liability on the government whenever a victim alleged his or her injuries were avoidable if the government installed a guardrail along the side of the roadway. The real estate, highways and sidewalks exception to sovereign immunity was inapplicable. 42 Pa.C.S. § 8522(b)(4).

4. In *Lockwood,* an intoxicated motorist failed to properly negotiate a sharp curve; his vehicle went down an embankment and stuck a

tree. The motorist died. The Court held the City's failure to install a guardrail along the curve in the road was not an exception to governmental immunity under the streets exception found in the section of the Judicial Code known as the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. § 8542(b)(6).

5. *Fritz v. Glen Mills Sch.,* 894 A.2d 172 (Pa. Cmwlth.), *appeal denied,* 589 Pa. 741, 909 A.2d 1291 (2006) (summary judgment for defendant landowner affirmed where plaintiff could not remember why his vehicle left roadway and therefore failed to provide sufficient evidence to justify inference of causation); *Baer v. Commonwealth, Dep't of Transp.,* 713 A.2d 189 (Pa.Cmwlth.1998) (where vehicle crossed highway and left road because of loss of brakes and intoxication of driver, summary

we concluded that the inability of the motorist to establish how or why she left the road prevented her from establishing one of the essential elements of her common law claim against PennDOT, causation. Accordingly, a summary judgment in favor of PennDOT was affirmed. In doing so, this Court rejected an argument similar to the one advanced here, that the driver did not need to explain how she came in contact with the guardrail because it was foreseeable that she would do so. *Martinowski*, 916 A.2d at 725, n. 6.

Applying *Martinowski* to the case before us, we conclude it is controlling. The PennDOT conditions of which Plaintiffs complain begin with the shoulder. Plaintiffs do not offer to prove, however, how the vehicle came to be on the shoulder. The failure to prove why the vehicle left its intended place on the paved portion of the highway results in a gap in the chain of causation between intended use of the highway and contact with a PennDOT instrumentality. *See Felli v. Commonwealth, Dep't of Transp.*, 666 A.2d 775 (Pa.Cmwlth.1995) (a vehicle leaving the traveled portion of the highway is not the ordinary and usual manner for using the highway).

Plaintiffs invite our attention to *Von der Heide v. Commonwealth, Department of Transportation*, 553 Pa. 120, 718 A.2d 286 (1998), for the proposition that PennDOT can be liable for a guardrail impact accident with little explanation as to why the vehicle left the roadway. In *Von der Heide*, the Supreme Court essentially affirmed a jury verdict against PennDOT and in favor of the estate of a driver whose vehicle crossed the opposing lane, hit a guardrail and came to rest against a bridge abutment. The estate alleged defective conditions of the roadway and guardrail, and PennDOT contended the driver fell asleep and failed to control his car. The Supreme Court found no error in the trial court's failure to give a jury instruction on superseding cause.

*Von der Heide* does not compel the urged result, for several reasons. Most obviously, the case was decided before all the decisions discussed above, which greatly diminished PennDOT's liability for leaving-the-pavement accidents. Further, unlike the present case, in *Von der Heide* there was proof of the deceased driver's negligence in causing his car to leave the roadway, which was apportioned with PennDOT's causal negligence under comparative negligence. *Id.* at 124–26, 718 A.2d at 288–89.[6]

judgment for PennDOT affirmed because accident too remote for PennDOT to have anticipated); *Felli v. Commonwealth, Dep't of Transp.*, 666 A.2d 775 (Pa.Cmwlth.1995) (because vehicle's unexplained crossing of center line and leaving traveled portion of the roadway is not the ordinary and usual manner for using the highway, judgment on pleadings in favor of PennDOT affirmed) *Saylor v. Green*, 165 Pa.Cmwlth. 249, 645 A.2d 318 (1994) (where motorcycle left roadway for no apparent reason and struck fence post located on PennDOT's property, summary judgment for PennDOT affirmed). *See also Babcock v. Commonwealth, Dep't of Transp.*, 156 Pa. Cmwlth. 69, 626 A.2d 672 (1993) (summary judgment in favor of PennDOT affirmed where motorist lost control of car for un-

known reasons, left pavement and hit log on PennDOT's property; accident caused by car leaving road not by log lying on ground).

**6.** In addition, the Supreme Court in *Von der Heide* noted that only two parties were involved, the driver (through his estate) and PennDOT. Because the superseding cause doctrine usually arises in the context of a third party's intervening conduct, and there was no third party in that case, application of that doctrine was troublesome.

In contrast, there are three parties in the present case: the passenger (through his estate), PennDOT and the driver (through his estate). Thus, the factual premise for the Supreme Court's decision in *Von der Heide* does not apply here.

Our Supreme Court's view of proximate cause, like its view of duty, is necessarily rooted in public policy considerations, that is, ideas of history, morals, justice and society in general in determining where the loss should fall. *Gardner v. Consol. Rail.* Courts faced with a causation question in leaving-the-pavement cases may resolve the issue with different language, but recent results are consistent: the loss tends to fall on the party with some responsibility for the vehicle leaving the pavement and not on an owner of land or objects nearby.

Guided by recent cases discussed above, we discern no error. Accordingly, we affirm.

### ORDER

**AND NOW,** this 15th day of April, 2008, the order of the Court of Common Pleas of Cambria County granting summary judgment in favor of the Department of Transportation of the Commonwealth of Pennsylvania is **AFFIRMED.**

### DISSENTING OPINION BY Judge FRIEDMAN.

The majority holds that the Court of Common Pleas of Cambria County (trial court) properly granted summary judgment to the Department of Transportation of the Commonwealth of Pennsylvania (DOT) because: (1) Susan Fagan and Michael P. Fagan (together, Fagan) did not offer to prove how the vehicle involved in the fatal accident in this case left the road before striking a turned-down guardrail terminal located on the shoulder of the road, and, thus, Fagan could not prove under the common law that DOT's negligence caused the fatality; and (2) the real

estate exception to sovereign immunity does not apply to a defective guardrail. For the reasons that follow, I cannot agree.

On August 7, 2002, Michael J. Fagan (Decedent) was a passenger in a car driven by Justin Glenn Martin (Driver), when, for unknown reasons, the car left the road and struck a turned-down guardrail terminal on the shoulder of the road. The guardrail caused the car to become airborne. The airborne car struck a utility pole and two trees and then rolled over. Both occupants of the car were killed.

Fagan sued DOT, alleging negligence with respect to the guardrail on the shoulder of the road. Fagan was prepared to offer expert testimony to prove that turned-down guardrail terminals have long been known to vault, roll and channel vehicles striking them and that DOT should have replaced the dangerous condition of the Commonwealth agency real estate well before the accident. DOT asserted the doctrine of sovereign immunity, but Fagan asserted that the Commonwealth waived the defense of immunity in this case.

The General Assembly of the Commonwealth has waived sovereign immunity where: (1) a party seeks damages arising out of a negligent act where the damages would be recoverable under the common law, or a statute creating a cause of action, if the injury were caused by a person not having available the defense of sovereign immunity; and (2) the claim for damages was caused by a dangerous condition of Commonwealth agency real estate, including highways under the jurisdiction of a Commonwealth agency. Sections 8522(a) and 8522(b)(4) of the Judicial Code, 42 Pa.C.S. §§ 8522(a) & 8522(b)(4).

### I. Common Law Negligence

#### A. Prima Facie Case

To establish common law negligence, a plaintiff must show that: (1) the defendant

had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage. *Krentz v. Consolidated Rail Corporation,* 589 Pa. 576, 910 A.2d 20 (2006).

A Commonwealth agency owes to those using its real estate a duty to keep the property safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used. *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989). DOT's duty to maintain Commonwealth highways includes a duty to maintain the "shoulders and other safety features such as ... guardrails." Section 9101 of the Vehicle Code, 75 Pa.C.S. § 9101. Thus, one of the intended purposes of the shoulder of a road is to provide safety in case of an emergency, e.g., to avoid a head-on collision with an oncoming vehicle or to avoid striking a deer. *See* 67 Pa.Code § 441.1 (stating that one purpose of the shoulder of a road is "emergency use").

Here, Fagan has evidence to show that the guardrail in question was not safe. Such evidence would establish a *prima facie* case of negligence, i.e., that, when DOT provides guardrails, DOT has a duty to provide guardrails that protect motorists rather than endangering them, that DOT breached its duty by failing to provide such a guardrail and that DOT's breach of duty caused a fatality.

### B. Superseding Cause

Inasmuch as Fagan's evidence could establish a *prima facie* case of negligence, the burden of proof would shift to DOT to show a superseding cause that relieves DOT from liability.[1]  *See Hargrove v.*

*Frommeyer & Company,* 229 Pa.Super. 298, 323 A.2d 300 (1974) (holding that the defendant in a negligence action failed to meet its burden of showing that, as a matter of law, a superseding cause relieved the defendant from any liability).

In *Powell v. Drumheller,* 539 Pa. 484, 653 A.2d 619 (1995), Powell sued DOT for negligent design of a Commonwealth highway. Powell's husband died when the vehicle he was driving was struck by a vehicle driven by Drumheller, who was driving with a suspended license and who pled guilty to vehicular homicide and driving under the influence of alcohol in connection with the accident. In her suit, Powell alleged that the accident occurred on a road that had no centerline, no road markings or signs restricting passing and no shoulders to provide room for emergency maneuvers.

DOT argued that the criminally negligent conduct of Drumheller was a superseding cause of the fatality that relieved DOT of liability for negligent design of the highway. Our supreme court disagreed, stating that the test to determine whether an intervening force is a superseding cause is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable. *Id.* The court stated that criminal conduct does not act as a *per se* superseding force and that the question is for the jury, unless the facts are uncontroverted and only one inference can be drawn. *Id.*

Here, then, to escape liability at the summary judgment stage of the proceedings, DOT needed to show based on undisputed facts that the Driver's or Decedent's conduct prior to the vehicle striking the guardrail was so extraordinary that it

---

1. I note that, before the Commonwealth became a comparative negligence state, there was a presumption of due care, i.e., that a deceased plaintiff exercised due care, which was based on the natural instinct of self-preservation. *Rice v. Shuman,* 513 Pa. 204, 519 A.2d 391 (1986). The purpose of the presumption was simply to direct the defendant to assume the burden of proof. *Id.*

could not have been reasonably foreseen. However, in this case, no one knows the prior conduct of Driver and Decedent or what caused the vehicle to leave the roadway and strike the guardrail. Because there are no undisputed facts upon which DOT could rely, it would not have been possible for DOT to meet its burden.[2]

## II. Real Estate Exception

The defense of sovereign immunity may not be raised to claims for damages caused by a dangerous condition of Commonwealth agency real estate, including highways under the jurisdiction of a Commonwealth agency. Section 8522(b)(4) of the Judicial Code, 42 Pa.C.S. § 8522(b)(4). This exception to the defense of immunity can be applied only to those cases where it is alleged that an artificial condition or defect of the land itself causes injury, not merely when it facilitates injury by acts of others. *Snyder.*

In *Dean v. Department of Transportation,* 561 Pa. 503, 751 A.2d 1130 (2000), our supreme court held that the absence of a guardrail on a highway did not constitute either an artificial condition or a defect of the land itself. However, in this case, a guardrail exists. Because the real estate exception to sovereign immunity includes highways, and highway maintenance includes maintenance of the shoulder and guardrail, a defect in a guardrail on the shoulder of a roadway is a defect of the real estate/highway itself. Thus, the real estate exception applies here.

Having concluded that Fagan would have an action at common law for negligence and that the real estate exception applies here, I conclude that the trial court erred in granting summary judgment to DOT.

Judge PELLEGRINI and Judge COHN JUBELIRER join in this dissent.

---

2. I submit that the majority incorrectly places the burden on Fagan to prove that the conduct of Driver and Decedent prior to striking the guardrail was **not** a superseding cause relieving DOT of liability. The majority holds that the conduct of Driver and Decedent prior to striking the guardrail is part of the chain of causation, i.e., but for the fact that the vehicle left the roadway, the vehicle would not have struck the guardrail. However, DOT's duty relates to the guardrail; the breach of duty relates to the guardrail; the injury relates to the guardrail; and the question of causation relates to the guardrail. The reason why the vehicle left the road is irrelevant, except as a superseding cause, and DOT has the burden of showing a superseding cause.

The majority's reliance on *Martinowski v. Department of Transportation,* 916 A.2d 717 (Pa.Cmwlth.2006), *appeal denied,* 594 Pa. 682, 932 A.2d 1290 (2007), is misplaced. In that case, the plaintiff was the driver of the vehicle, and DOT presented undisputed evidence showing that she was driving while intoxicated when she left the road and struck a guardrail. Thus, there was evidence of conduct by the plaintiff that constituted a superseding cause. Here, there is no such evidence, and the plaintiff in this case is the passenger, **not** the driver of the vehicle.