Ivette QUINONES, Appellant

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION and Joyce Brunell, as Administratrix of the Estate of Jason Brunell.**

Commonwealth Court of Pennsylvania.

Argued May 14, 2012.

Decided June 5, 2012.

Jonathan J. Russell, Doylestown, for appellant.

Claudia M. Tesoro, Philadelphia, for appellee Department of Transportation.

BEFORE: PELLEGRINI, President Judge, and COVEY, Judge, and COLINS, Senior Judge.

OPINION BY Judge COVEY.

Ivette Quinones (Quinones) seeks review of the Court of Common Pleas of Monroe County's (trial court) August 3, 2011 order granting summary judgment in favor of the Commonwealth of Pennsylvania, Department of Transportation (DOT). The issue before this Court is whether the trial court properly granted summary judgment. We affirm.

On the morning of February 16, 2006, while driving on State Route (S.R.) 33, Jason Brunell (Brunell) lost control of his northbound vehicle, crossed the grassy median, and struck a southbound vehicle driven by Quinones. Brunell was fatally injured, and Quinones sustained severe injuries. On August 28, 2007, Quinones initiated the instant action against Joyce Brunell, as Administratrix of the Estate of Jason Brunell, and DOT. Quinones alleged that DOT was negligent in that it defectively designed, constructed, and/or maintained S.R. 33, and that the alleged defect was the cause of the crash.

On May 27, 2011, DOT filed a motion for summary judgment alleging that Quinones' claim was barred by sovereign immunity. On August 3, 2011, the trial court granted DOT's motion, finding that "the narrow median and lack of a guardrail does not constitute a defect in the real property." Trial Court Op. at 8. The trial court further found that Quinones had "fail[ed] to satisfy the threshold legal requirement that the median is a dangerous condition of the Commonwealth's realty." Trial Court Op. at 9. Quinones appealed to this Court.[1]

Quinones argues that the trial court erred when it dismissed this matter. She claims that DOT owed a duty of care to the public to properly design and maintain the median to ensure that the median was safe for the activities for which it was regularly used, intended to be used or reasonably foreseen to be used, i.e., to "control," "impede" and "separate" the flow of traffic. Quinones reasons that because the median did not prevent Brunell's vehicle from crossing into her roadway, it failed in its essential purpose. We disagree.

■ "DOT is an administrative agency of the Commonwealth and a 'Commonwealth party' pursuant to section 8501 of the Judicial Code, 42 Pa.C.S. § 8501. Commonwealth agencies, including DOT, generally are immune from tort liability pursuant to section 8521(a) of the Sovereign Immunity Act, 42 Pa.C.S. § 8521(a)." *Cowell v. Dep't of Transp.*, 883 A.2d 705, 708 (Pa.Cmwlth.2005). Thus, sovereign immunity is available to DOT as a defense in all actions, except where the General Assembly has expressly waived it. *Powell v. Drumheller*, 539 Pa. 484, 653 A.2d 619 (1995).

By way of exception to the general rule of sovereign immunity, section 8522(a) of the Sovereign Immunity Act, 42 Pa.C.S.

---

1. "The scope of this Court's review of a grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion." *Kaplan v. Se. Pa. Transp. Auth.*, 688 A.2d 736, 738 n. 2 (Pa.Cmwlth.1997). "Summary judgment is appropriate only when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608, 613 (Pa.Cmwlth.2006). The appellate standard of review is de novo when a reviewing court considers questions of law. *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 926 A.2d 899 (2007). In reviewing questions of law, the scope of review is plenary, as the reviewing court may examine the entire contents of the record. *Id.*

§ 8522(a), provides that liability may be imposed against Commonwealth parties for damages arising out of a negligent act where: (1) damages would be recoverable under common law or statute creating a cause of action if the injury were caused by a non-immune entity; and (2) the injury caused by the negligent act of a Commonwealth party falls within one of the nine exceptions to sovereign immunity enumerated in 42 Pa.C.S. § 8522(b).

*Cowell*, 883 A.2d at 708.

■■■ The General Assembly has waived sovereign immunity for damages caused by "[a] dangerous condition of Commonwealth agency real estate and sidewalks ... and highways under the jurisdiction of a Commonwealth agency...." 42 Pa.C.S. § 8522(b)(4). Specifically, "sovereign immunity is waived ... where it is alleged that the artificial condition or defect of the land itself causes an injury to occur." *Dean v. Dep't of Transp.*, 561 Pa. 503, 510, 751 A.2d 1130, 1133 (2000) (quoting *Snyder v. Harmon*, 522 Pa. 424, 434–35, 562 A.2d 307, 312 (1989)). Exceptions to sovereign immunity are to be narrowly construed. *Dean.*

■■■ This Court has held:
[I]n order to prevail in a negligence action under common law, the plaintiff must establish that: (1) the defendant owed a duty of care to the plaintiff; (2) that duty was breached; (3) the breach resulted in the plaintiff's injury; and (4) the plaintiff suffered an actual loss or damages.

*Brown v. Dep't of Transp.*, 11 A.3d 1054, 1056 (Pa.Cmwlth.2011). Therefore, in the instant case, if DOT had no duty to construct a barrier on the median, and no duty to design and construct the median so as to prevent such an accident, summary judgment was properly granted. "The question of whether a duty exists is purely a question of law." *Id.*

Case law supports DOT's position that it has no such duty.[2] In *Dean*, the Pennsylvania Supreme Court held that the absence of a guardrail does not render a highway unsafe for its intended purpose—travel on the road. In that case, a vehicle

---

**2.** Quinones relies upon *Hubbard v. Department of Transportation*, 660 A.2d 201 (Pa. Cmwlth.1995) and *Slough v. City of Philadelphia*, 686 A.2d 62 (Pa.Cmwlth.1996), *aff'd*, 553 Pa. 673, 720 A.2d 485 (1998), to support her conclusion "that sovereign immunity has been waived for Commonwealth owned and maintained medians." Quinones Br. at 19. Although both cases affirm awards against the Commonwealth, they provide limited discussion or analysis of sovereign or governmental immunity. Both cases primarily focus on whether the location of the pedestrians' injuries were the responsibility of the City or the Commonwealth. Specifically, in *Hubbard*, the Court noted, "the issue presented in this case is whether the edge of the median strip is a curb ... thereby removing it from the jurisdiction of [DOT] and making it the responsibility of the City." *Id.*, 660 A.2d at 204. In *Slough*, the Court stated, "the sole issue for our review is whether the median is a 'traffic control device' or part of the highway." *Id.*,

686 A.2d at 63. There is little discussion in either case as to the basis for waiving immunity. However, these cases can be distinguished from the instant matter in several ways. Unlike the present action, both cases involved pedestrians, not vehicles traveling on the highway, pedestrian falls resulting from physical defects in the median, and the median was a raised area, which, due to improper maintenance, itself caused the injury, i.e., the median had been found to be defective. In addition, based on the facts of those cases, it can be presumed that it was reasonably foreseeable that pedestrians would traverse the medians. Further, the facts in these cases did not involve consideration of whether the condition of the median was a danger to those *traveling on the highway.* Finally, the cases were decided prior to the Supreme Court's decision in *Dean.* Therefore, we conclude that the cases Quinones cites do not provide support for the proposition that sovereign immunity has been waived in the instant matter.

fishtailed in snow, left the roadway, traveled down an embankment, and overturned. The plaintiff passenger alleged that DOT was negligent in failing to install a guardrail, and for failing to properly design, construct and maintain a safe highway. DOT filed a motion for summary judgment asserting sovereign immunity.

As to the duty owed by DOT, the Court stated, "[t]he corresponding duty of care a Commonwealth agency owes to those using its real estate, is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used." *Dean*, 561 Pa. at 510, 751 A.2d at 1133–34 (quoting *Snyder*, 522 Pa. at 434–35, 562 A.2d at 312 (1989)). The *Dean* court concluded:

> [T]he Commonwealth's failure to erect a guardrail on the highway is not encompassed by the real estate exception to sovereign immunity. Similar to the absence of lighting and the deceptive appearance of the shoulder of the road in *Snyder*, the absence of a guardrail cannot be said to be a dangerous condition of the real estate that resulted in a reasonably foreseeable injury to Appellee. Stated differently, the lack of a guardrail does not render the highway unsafe for the purposes for which it was intended, i.e., travel on the roadway. This being the case, it is irrelevant whether the guardrail is found to be a part of the state-owned highway. We simply find that the legislature did not intend to impose liability upon the government whenever a plaintiff alleged that his or her injuries could have been avoided or minimized, had the government installed a guardrail along side the roadway.

*Id.*, 561 Pa. at 511–12, 751 A.2d at 1134 (footnotes omitted).

Following *Dean*, numerous other cases further clarified DOT's duty to the public. In *Svege v. Interstate Safety Service, Inc.*, 862 A.2d 752 (Pa.Cmwlth.2004), a tractor-trailer crashed through a 32–inch concrete barrier separating eastbound and westbound traffic on the Pennsylvania Turnpike, striking a vehicle and killing plaintiffs' family members. Relying on *Dean*, the trial court granted DOT's summary judgment motion, holding that the median barriers could not give rise to liability even if a stronger barrier could have been more effective. This Court affirmed the trial court's conclusion that plaintiffs' negligence claims were barred by sovereign immunity. *See also Fagan v. Department of Transportation*, 946 A.2d 1123 (Pa. Cmwlth.2008); *Simko v. County of Allegheny*, 869 A.2d 571 (Pa.Cmwlth.2005).

Most recently, in *Brown v. Department of Transportation*, 11 A.3d 1054 (Pa. Cmwlth.2011), in considering whether DOT owed a duty to install rumble strips on the highway, this Court discussed the *Dean* decision, noting:

> [T]he [Supreme Court] concluded that DOT does not have a duty to install guardrails because the absence of guardrails does not render the highway unsafe for its intended use. The same analysis applies to rumble strips. Rumble strips, like guardrails, are safety features that may reduce the injuries caused when a car drifts off the traveled roadway, but the *absence* of such safety features does not make the highway unsafe for its intended use and does not, in and of itself, *cause* accidents to occur. *Id.* In *Dean*, the reason the vehicle left the road was that it slid on the snow, not that there was no guardrail. Similarly, here, the reason [the] car left the road was that [the driver] fell asleep while he was driving it, not that there were no rumble strips to wake him up. We

therefore conclude that DOT did not have a duty to install rumble strips. *Brown,* 11 A.3d at 1057 (footnotes omitted). In the instant matter, DOT had no duty to erect a median barrier that may have kept Brunell's vehicle from leaving the roadway, crossing the median and striking Quinones' vehicle. The lack of the barrier did not "render the highway unsafe for the purposes for which it was intended, i.e., travel on the roadway." *Dean,* 561 Pa. at 511, 751 A.2d at 1134.

■ Further, Quinones asserts that DOT had a duty to design, construct and maintain the median with sufficient width and slope to deter crossovers. Although this Court has not explicitly ruled upon whether DOT has such a duty, the Court has addressed the issue as it pertains to the shoulder of a highway. In *Lambert v. Katz,* 8 A.3d 409 (Pa.Cmwlth.2010), this Court determined that DOT did not have a duty to make the roadway shoulder wider in anticipation that vehicles might lose control and utilize the shoulder to regain control, because shoulders were not intended for vehicular travel. Adhering to *Dean* and its progeny, as we must, we similarly conclude that the median is not intended for vehicular travel, and accordingly, DOT owed no duty to design, construct and maintain the median to deter crossovers.

■ Quinones also argues that the design and construction of the median itself was a dangerous condition of Commonwealth **real estate,** separate and distinct from the highway. In essence, Quinones argues that the median should be considered not in the context of whether it rendered the *highway* unsafe for its intended purpose—travel on the roadway, but rather, whether the *median* was safe for *its* intended use—to "control," "impede" and "separate" the flow of traffic.

In *Stein v. Pennsylvania Turnpike Commission,* 989 A.2d 80 (Pa.Cmwlth.

2010), this Court rejected an attempt by a plaintiff to invoke the real estate exception rather than the highway exception to evade the application of the relevant law. In response, this Court stated:

In *Dean* and in every other case involving a guardrail, whether alleged to be negligently absent or negligently designed, it is the highway exception that governs the sovereign immunity analysis. Indeed, [plaintiff's] cause of action is based upon the argument that the guardrail's design presented a danger to one traveling on the highway, *i.e.,* Decedent. Accordingly, the focus is whether the guardrail in question rendered the highway unsafe for its intended purpose of travel.

[Plaintiffs'] argument that the *Fagan* holding can be avoided by invoking the real estate exception, as opposed to the highway exception, is creative. However, it does not work for several reasons. First, the Section 8522(b)(4) inquiry requires that the dangerous condition be determined in the context of the intended purpose of the Commonwealth's "real estate and sidewalks . . . and highways." 42 Pa.C.S. § 8522(b)(4). It is difficult to conceive of how a negligently designed guardrail would apply to any realty, other than a highway. Certainly, the hillside next to the roadway, where Decedent's fatal injury took place, was not intended to be a place where vehicles would drive. [Plaintiff] has not directed us to a single case, from any jurisdiction, where a state or a local government has been held liable for a negligently designed guardrail on the theory that it makes the land adjacent to the highway unsafe, as opposed to the highway itself. Indeed, we rejected the argument in *Simko,* 869 A.2d 571, that the lack of a guardrail created a dangerous condition on the land adjacent to the highway.

*Stein,* 989 A.2d at 87. We similarly reject Quinones' argument. The proper focus in the instant matter is whether the condition of the median *rendered the highway unsafe for its intended purpose.* We hold that it did not. Thus, DOT had no duty to maintain the median in such a way as to deter crossovers.

With respect to causation, this Court has held that "the real estate exception will only apply where it is alleged that an artificial condition or defect of the land *itself caused* an injury to occur, and not where it merely facilitates injury by the acts of others, whose acts are outside the scope of liability." *Cowell,* 883 A.2d at 709. In *Cowell,* an object was thrown from an overpass, striking a vehicle passing below. The object went through the windshield and caused the death of the passenger. The Court concluded:

> [I]t is clear that neither the Bridge itself nor any artificial condition thereon, *caused* the injuries here. Rather, whether characterized as intentional or negligent, *the conduct of a third party* resulted in an Object being thrown or dropped from the Bridge, killing Plaintiff's Decedent and injuring Plaintiff and other family members. The Object is not a defect of the Bridge, nor does it derive from the real estate at issue.

*Id.,* 883 A.2d at 709–10 (footnote omitted). This Court has also stated:

> The failure to prove why the vehicle left its intended place on the paved portion of the highway results in a gap in the chain of causation between intended use of the highway and contact with a PennDOT instrumentality. *See Felli v. Commonwealth, Dep't of Transp.,* 666 A.2d 775 (Pa.Cmwlth.1995) (a vehicle leaving the traveled portion of the highway is not the ordinary and usual manner for using the highway).

*Fagan,* 946 A.2d at 1128. The *Fagan* Court concluded, "courts faced with a causation question in leaving-the-pavement cases may resolve the issue with different language, but recent results are consistent: the loss tends to fall on the party with some responsibility for the vehicle leaving the pavement and not on the owner of land or objects nearby." *Id.,* 946 A.2d at 1129. The result is the same in the instant case—as DOT correctly argues, the median did not cause Quinones' injuries, Brunell's vehicle did when Brunell lost control of his car.

■ Quinones argues that the trial court erred by relying upon a "facilitation" causation analysis rather than a "purpose" analysis. She asserts that pursuant to *Thornton v. Philadelphia Housing Authority,* 4 A.3d 1143 (Pa.Cmwlth.2010), the trial court should have considered whether the real property—the grassy median—was unsafe for its intended purpose, rather than concluding that the median facilitated Quinones' injuries. We disagree. The "purpose" analysis relates to whether there existed a duty. *See Dean.* The "facilitation" causation analysis pertains to causation. *See id.* These are two separate elements of a negligence claim: duty and causation. The trial court considered both elements and rejected Quinones' claims for several reasons. It concluded that the lack of a median barrier did not constitute a defect in the real property because it did not render the highway unfit for the purposes for which it was intended. It further rejected Quinones' real estate exception claim (pertaining to the median's intended purpose). Finally, it concluded that Brunell caused Quinones' injuries, not the median. We discern no error in the trial court's analysis.

For the above-stated reasons, the trial court's order is affirmed.

## *ORDER*

AND NOW, this 5th day of June, 2012, the August 3, 2011 order of the Court of Common Pleas of Monroe County is affirmed.