**Elkadi v. Pa. Department of Transportation**

C.P. of Monroe County, No. 1048 CV 2007

*Regis M. McClelland*, for plaintiffs.
*John W. Stahl*, for Commonwealth.

MARK, *J.*, Sept. 15, 2014—Previously, we issued an order granting the motion of the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") for summary judgment. In the order, we summarized our reasons for granting the motion and indicated that an opinion would follow. This opinion fleshes out the reasons

why we granted PennDOT's motion.

On February 24, 2005, plaintiff's father, James O. Allison ("decedent"), was operating a vehicle westbound on State Route 940 in Tobyhanna Township when, according to plaintiff, "[t]he vehicle's right tires became caught in a pothole, drop-off, and/or rutted areas along the right side of the road surface, ...[which] caused the vehicle to fishtail across the roadway and to collide with a truck heading eastbound in the oncoming traffic." (Pl.'s Compl. ¶ 4.) As a result of the collision, plaintiff's father suffered severe injuries and died. (*Id.* at ¶ 5.)

Subsequent to her father's death, plaintiff filed a wrongful death and survival action. In her complaint, plaintiff alleged that PennDOT and Tobyhanna Township breached duties owed to her father and the traveling public, by, among other acts or omissions,:

a. Failing to properly inspect, maintain, and/or repair the roadway *and shoulder areas* of Route 940;

b. ...allowing the condition of the surface of the roadway *and/or shoulder of the roadway* to deteriorate and develop dangerous drop-offs, ruts and/or potholes;

c. ... failing to...alert motorists to the dangerous and/or hazardous condition of the roadway [] *and/or shoulder* of Route 940;

****

g. ...negligently and improperly designing and constructing the roadway of Route 940 so that motorists are forced to utilize the shoulder of the roadway as a lane of travel in order to pass traffic making a left turn; thereby, contributing to the deterioration of

the condition of the surface of the shoulder and the roadway;

****

j. ...failing to take action to repair potholes, a drop-off, and/or ruts in the roadway after defendant PennDOT was notified of the existence of the same; and;

h. ... failing to keep the roadway safe from dangerous conditions.

(*Id.* at ¶ 5-6.)

Following a lengthy discovery period that stretched out over six years, PennDOT filed the instant motion for summary judgment arguing that, under current law, it did not owe plaintiff's decedent a duty and no exception to sovereign immunity applies because it did not have a duty to maintain the shoulder of the road or eliminate the edge drop off that caused the fatal accident. Plaintiff filed an answer asserting that PennDOT did owe a cognizable duty, that at least one exception to immunity applies, and that this matter is distinguishable from the cases on which PennDOT relies.

After considering the exhaustive briefs and arguments of the parties, we issued our order granting PennDOT's motion. We found that, under current precedent and on the record presented, we were "constrained to find that plaintiff failed to establish that defendant had a duty to plaintiffs decedent and breached it or that any exception to sovereign immunity applies."

## Discussion

Under the Pennsylvania Rules of Civil Procedure, summary judgment is appropriate where:

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. Summary judgment may be granted only in cases where the right is free and clear from doubt. *Musser v. Vilsmeier Auction Co. Inc.*, 562 A.2d 279, 280 (Pa. 1989). Typically, the moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Thompson*, 412 A.2d at 469. The record must be viewed in light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Co.*, 264 A.2d 597 (Pa. 1970).

In response to a motion for summary judgment, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner*, 303 A.2d 826 (Pa. 1973). In ruling on a motion for summary judgment, the court may consider the pleadings, depositions, answers to interrogatories, admissions, and supporting affidavits. Pa.R.C.P. 1035.1.

In support of its motion, PennDOT argues that it is protected from suit in this matter by sovereign immunity. While the general assembly has carved out exceptions to this general rule, PennDOT continues, none apply here. PennDOT also argues that our appellate courts have previously determined, in decisions that are binding upon this court, that PennDOT has neither a specific duty to clear the roads of ice and snow nor a duty to make the shoulders of the roadway whether paved or unpaved, safe for travel.

Plaintiff counters that the facts of this case are "clearly distinguishable" from the facts in the cases relied upon PennDOT. Most notably, plaintiff points to the fact that, in the area where the accident occurred, the shoulder is frequently used as a lane of travel by vehicles due to "frequent left turns" by other vehicles. Due to how often the shoulder is utilized, plaintiff continues, "it is reasonably foreseeable that the decedent's car would travel onto the shoulder and be detrimentally impacted by its poor maintenance." (Pl.'s Br. at 7.) Plaintiff further attempts to distinguish the facts of this case from those PennDOT cites by noting that the decedent's vehicle "did not leave the roadway." Instead, "[t]he [decedent's] vehicle never in fact left the intended path of travel on the roadway. At most, the right side tires traveled inches onto the berm before the vehicle was thrown into a spin into oncoming traffic. Plaintiff submits that it was the condition of the road itself which caused the accident." (Pl.'s Br. at 7-8.)

Generally, barring waiver of sovereign immunity by the general assembly, Commonwealth agencies are immune from suit for tort liabilities. *Lambert v. Katz*, 8 A.3d 409, 413 (Pa. Cmwlth. 2010). Under the Sovereign Immunity Act, 42 Pa.C.S. § 8522(a), the general assembly

has authorized the "imposition of liability against Commonwealth agencies for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person to whom the defense of sovereign immunity is not available." *Id.* To satisfy this threshold requirement, a plaintiff must establish the four elements of common law negligence: (1) the defendant's legally recognized duty; (2) a breach of that duty; (3) causation; and (4) actual damages. *Id.*

As stated by our Supreme Court, the "'duty of care a Commonwealth agency owes to those using its real estate [] is such as to require that the condition of the property is safe for the activities for which it is regularly used, intended to be used or reasonably foreseen to be used.'" *Id.* (quoting *Snyder v. Harmon*, 562 A.2d 307, 312 (Pa. 1989)). In turn, motorists are obligated to "use the highways in the ordinary and usual manner of reasonable care." *Id.* Because Commonwealth agencies are generally immune from suit, they may breach a duty owed "yet not be liable unless a breach is coincidental with an exception" to Section 8522(a) of the Sovereign Immunity Act. *Id.* at 414 (quoting *Bendas v. Twp. of White Deer*, 611 A.2d 1184, 1186 (Pa. 1992)). To overcome sovereign immunity, tort plaintiffs must further demonstrate their allegations fit within one of the enumerated exceptions as set forth in section 8522(b). *Lambert*, 8 A.3d at 414. There exist nine such exceptions, each of which we are required to strictly construe. *Id.*

Of these nine exceptions, only two are even potentially relevant to this case. The first is the real estate exception, which permits a claim against the Commonwealth when the claimant demonstrates that a dangerous condition of

Commonwealth agency real estate and sidewalks, including highways under the jurisdiction of a Commonwealth agency, caused the injury that led to the claim. 42 Pa.C.S. § 8522(b)(4). For this exception to apply, the plaintiff must aver "that the dangerous condition derived, originated from or had as its source the Commonwealth realty itself." *Lambert*, 8 A.3d at 414 (citing *Jones v. SEPTA*, 772 A.2d 435, 443 (Pa. 2001)).

The only other possible exception is the dangerous conditions exception. Under this exception, the Commonwealth will be held liable if there exists "[a] dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar conditions created by natural elements." 42 Pa.C.S. § 8522(b)(5). In order to prevail, however, a claimant must prove that the dangerous condition "created a reasonably foreseeable risk of the kind of injury which was incurred." 42 Pa.C.S. § 8522(b)(5). A claimant must further demonstrate that the Commonwealth agency had actual written notice of the dangerous condition and sufficient time before the event to remedy the situation. 42 Pa.C.S. § 8522(b)(5).

In this case, plaintiff avers that decedent was traveling west on Route 940 when the "vehicle's right tires became caught in a pot-hole, drop-off, and/or rut in the road surface," causing the vehicle fishtail across the road into oncoming traffic. (Pl.'s Compl. ¶ 4.) Plaintiff goes on to allege, in several averments, that PennDOT failed, in a number of different ways, to properly maintain the shoulder on the section of Route 940 where the accident occurred. According to an accident reconstruction report compiled by Sgt. Chris Wagner of the Pocono Mountain Regional Police, a heavy accumulation of snow had "covered and

obscured roadway markings and boundaries" on Route 940. (PennDOT's motion ex. A.) Thereafter, decedent's vehicle crossed over the white fog line onto the westbound shoulder. This particular section of the shoulder "was in disrepair, including, but not limited to an asphalt drop off of between 1-2 inches and several potholes." (PennDOT's motion ex. A.) As decedent attempted to correct his course and return to the roadway, "the asphalt drop off, coupled with snow accumulation, sent [eecedent's vehicle] into a counter clockwise rotation," which sent decedent's vehicle spinning into the eastbound lane, where it collided with an oncoming truck. (PennDOT's Br. Ex. A.). Sgt. Wagner reiterated and confirmed these conclusions during his deposition. (PennDOT's motion ex. B.)

Plaintiff's expert, Richard M. Balgowan, produced a report very much in accord with Sgt. Wagner's investigation. Mr. Balgowan determined that the asphalt drop-off "was the trigger that initiated [decedent's] loss of control and led to his death and the injuries to Kathleen Allison and John Pardue." (PennDOT's motion ex. D.) This drop-off into the shoulder "made the roadway dangerous in a manner that caused this crash." (PennDOT's motion ex. D.) "The absence of a safe and adequate *shoulder* deprived [decedent] of a normally provided safety feature and caused the crash." (PennDOT's motion ex. D) (emphasis added).

Plaintiff does not allege PennDOT failed to maintain the shoulder; instead, they contend — and base their case on — PennDOT's "failure to maintain the highway in a condition safe for expected vehicular traffic." (Pl.'s br. at 9.) Plaintiff submits that the paved area to the right of the white fog line on this particular portion of Route 940, as seen in many of the numerous photographs submitted

by the parties, is frequently used as a passing lane for vehicles attempting to maneuver around other vehicles making left-hand turns. Therefore, plaintiff continues, use of this paved area is foreseeable if not intended, By making use of this paved area, Plaintiff argues, decedent's vehicle never actually left the intended path of travel, and it was only because PennDOT failed to "adequately maintain the edge of the roadway, not its failure to create a safe shoulder area, caused the drop-off which resulted in [decedent's] death." (Pl.'s br. at 9.) "At most the right side tires traveled inches onto the berm before the vehicle was thrown into a spin into oncoming traffic. Plaintiff submits that it was the condition of the road itself which caused the accident." (Pl.'s br. at 9.)

Plaintiff's argument, though well-taken, is under current law misplaced. In *Lambert*, the Commonwealth Court defined the role of a shoulder on a highway. The court began by noting that case law has distinguished a "right-of-way" from the paved portions of a street for the purposes of the real estate exception. The "highway" includes both the "cartway," which is the paved and traveled portion of the road, and the berm of shoulder, which is "'the paved portion to either side of the actual traveled portion of the highway, not the right-of-way.'" *Lambert*, 8 A.3d at 418 (quoting *Granlich v. Lower Southampton Township*, 838 A.2d 843, 846 (Pa. Cmwlth. 2003). The roadway, meanwhile, is the part of "'[t]hat *portion of a highway* improved, designed or ordinarily *used for vehicular travel, exclusive of the*...berm or *shoulder* even though such...berm or shoulder is used for pedacycles.'" *Lambert*, 8 A.3d at 418 (quoting section 102 of the Vehicle Code, 75 Pa.C.S. § 102) (emphasis in original). Taken together, these definitions indicate that the shoulder is the area, whether paved or not, that sits outside

the white fog line. "By electing to exclude shoulders from the definition of roadway, the general assembly signaled its determination that shoulders, unlike the remaining part of the highway, are not intended for vehicular travel." *Lambert*, 8 A.3d at 418.

Further, recent decisions from the Commonwealth Court make clear that PennDOT has no duty to "design, construct and maintain the shoulder drop-off." *Bubba v. Dept. of Transportation*, 61 A.3d 313,317 (Pa. Cmwlth. 2013), *petition for allowance of appeal denied*, 79 A.3d 1099 (Pa. 2013). Here, plaintiff couches her argument in terms of the "edge of the roadway" and not the shoulder, but this is a distinction without a difference. The paved portion of any road must, of course, at some point come to an end, thus creating an edge often leads into a gravelly or rocky area, as was the case here. Where the edge of the pavement and the gravelly area meet, there is commonly some sort of drop-off. However, as noted, the Commonwealth Court expressly held that PennDOT has no duty to maintain this drop-off.

In *Bubba*, the driver of a vehicle swerved to avoid an animal. This sudden jerk of the wheel caused the right-side tires to "drop[] off the highway where the road abuts the dirt and gravel berm/shoulder." *Id.* at 315. As the driver tried to correct her course by steering back to the left, the vehicle jumped up from the two- to three-inch dropoff, crossed the road, flipped, struck a utility pole and crashed into a house. *Id.* In determining whether PennDOT owed a duty to maintain the shoulder, the court examined *Dean v. Department of Transportation*, 751 A.2d 1130 (Pa. 2000) and *Brown v. Department of Transportation*, 11 A.3d 1054 (Pa. Cmwlth. 2011). In *Dean*, our Supreme Court determined that PennDOT has no duty to install guardrails, while the

Commonwealth Court held in *Brown* that PennDOT has no duty to install rumble strips. In both of those cases, as well as in *Quinones v. Department of Transportation*, 45 A.3d 467 (Pa. Cmwlth. 2012), the courts focused their analysis on the reason the vehicle left the road. In *Dean*, the vehicle left the road because, as here, it slid on accumulated snow, while in *Brown* the driver fell asleep. In *Quinones*, too, driver conduct caused the vehicle to leave the road. *Bubba*, 61 A.3d at 317. Ultimately, the *Bubba* court concluded "that the drop-off did not cause [appellant's] injuries, [the driver's] lack of control of her vehicle did when she swerved to avoid the animal in the roadway. The shoulder is not intended for vehicular travel and, accordingly, [PennDOT] owed no duty to design, construct and maintain the shoulder drop-off." *Id.*

In the instant case, plaintiff sparingly alleges that the right-side tires of decedent's vehicle became caught in a "pothole, drop-off, and/or rutted area along the right side of the road." (Pl.'s compl. ¶ 4.) Despite arguing that vehicles frequently traveled outside of the fog line on this particular portion of Route 940 to avoid vehicles making left turns, plaintiff does not allege that decedent was attempting to pass another vehicle when his tires left the roadway. As Sgt. Wagner noted in his report, "[p]rior to and during this event, the area was experiencing a substantial accumulation of snowfall." (PennDOT's motion ex. A.) This snowfall "covered and obscured roadway markings and boundaries." (PennDOT's motion ex. A.) There is, as PennDOT argues, no evidence that the condition of the travel lanes, apart from snow accumulation,[1] caused this

---

1. The Commonwealth Court long ago made clear that PennDOT has no duty "to remove or treat natural accumulations of ice and snow." *Huber v. Dept. of Transportation*, 551 A.2d 1130, 1132 (Pa. Cmwlth. 1988).

accident. Instead, based on the pleadings and the evidence presented, it was a combination of snow accumulation and decedent's inability to clearly see the roadway markings and boundaries that led his vehicle to drift off the roadway and onto the shoulder.

In sum, we granted summary judgment because, under the facts of this case and the holding and rationale of our Commonwealth Court in *Bubba, supra and Lambert, supra*, PennDOT owed no duty to plaintiff's decedent and no exception to sovereign immunity applied. *See also Hindle v. Department of Transportation*, 2012 WL 8685890, No. 1561 C.D. 2011 (Pa. Cmwlth., filed July 5, 2012) (persuasive but non-precedential decision).