IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew J. Snyder,                          :
Executor of the Estate of                   : No. 2233 C.D. 2014
Robert F. Snyder, Jr.,                      : Argued: September 17, 2015
                                            :
                          Appellant         :
                                            :
                  v.                        :
                                            :
Brecknock Township,                         :
Fiorenzo Ferretti,                          :
and Christine Ferretti                      :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                    FILED: November 6, 2015


Matthew J. Snyder, Executor of the Estate of Robert F. Snyder, Jr., (Snyder) appeals from the September 16, 2014, orders of the Court of Common Pleas of Berks County (trial court) granting the motions for summary judgment filed by Brecknock Township (Township) and Fiorenzo and Christine Ferretti (Ferrettis) (collectively, Appellees). We affirm the trial court's order regarding the Ferrettis, reverse the trial court's order regarding Township, and remand for further proceedings.

On July 25, 2008, Robert F. Snyder, Jr. (Decedent) was driving his vehicle on Gouglersville Road, which is owned by Township. Decedent traveled off

of the road and struck a metal I-beam located on the Ferrettis' property. A Township speed limit sign was attached to the I-beam, which Township later removed.

Snyder filed a wrongful death and negligence survival action against Appellees. Snyder alleged that Gouglersville Road was unsafe and that the I-beam, which was installed by the previous owner of the Ferrettis' property, was dangerous.

Snyder and Decedent's other family members testified that they are unaware of what caused the accident. The coroner opined that seconds before the accident, Decedent may have had a heart attack, which caused him to travel off of the road. At the time of the accident, Decedent was 60 years old and had lived in his home, which was approximately one mile from the accident site, for about 14 years. Decedent was disabled with multiple sclerosis but was able to drive a car.

Snyder presented two police reports that detailed two earlier vehicular accidents on the Ferrettis' property, one in 2003 and the other in 2004. The 2003 accident involved a drunk driver who drove off of the road and hit a tree in the Ferrettis' front yard, which was not near the I-beam. In the 2004 accident, a driver lost control of her vehicle and drove onto the Ferrettis' property.

Snyder presented the supplemental report of Kevin E. O'Conner, P.E., an accident reconstruction expert. O'Conner determined that the sight distance for drivers stopped on Blimline Road looking to the left is impeded by trees and brush. O'Conner stated that Gouglersville Road consisted of worn asphalt and that there was loose gravel on the surface near the accident site. O'Conner stated that Decedent

may have applied his brakes and skidded due to friction differences between the tires on the clean surface and the tires on the gravel-covered surface. O'Conner further stated that there were no signs warning drivers of the approaching intersection or of the road curving at the accident site. O'Conner believes that the metal I-beam should be removed or made safer because it is in the clear zone.[1]

After reviewing and analyzing the available information, O'Conner opined to a reasonable degree of engineering certainty as follows:

> The geometry of Gouglersville Road was substandard and that the substandard geometry created a dangerous condition that was a substantial factor in causing [Decedent] to leave the road and strike the metal I-Beam. As a Township Road, Brecknock Township should have been aware of the substandard condition of Gouglersville Road. Brecknock Township's failure to warn motorists of the dangerous substandard condition of the highway by installing the appropriate traffic control devices was also a substantial factor in causing [Decedent] to leave the roadway. The failure of Brecknock Township to keep the surface clear of loose gravel from the pavement surface created a dangerous condition that *could* contribute to a driver losing control of his vehicle on the sharp curve at the accident site and leave the road. Brecknock Township's failure to remove the I-Beam even though it was within the Township right of way and even though the Township knew that the I-Beam had been struck by eastbound vehicles at least twice before, maintained the dangerous condition created by the I-Beam.

---

[1] O'Conner described the clear zone as "the total roadside border area, starting at the edge of the traveled roadway . . . that is available for safe use by errant vehicles. In other words, it is the distance from the edge of the traveled way to the hazard." (O'Conner Supp. Report, 8/26/14, at 7 (citation omitted).)

The installation of the I-Beam by [the] previous owner of the property . . . for the purpose of having those vehicles strike the I-Beam instead of shrubs at a location where it was known that vehicles were likely to leave the roadway due to the substandard highway geometry and the lack of adequate warning created a dangerous condition. The continued maintenance of the I-Beam by the property owners at the time of the accident . . . despite their knowledge that it had been struck before by other vehicles maintained the dangerous condition . . . .

It is also my opinion that had the dangerous conditions of the highway geometry been eliminated or had the proper traffic control devices be[en] installed and had the travel portion of the highway been kept free from foreign material [Decedent] would not have left the roadway and he would not have contacted the I-Beam. It is also my opinion that had the I-Beam not been installed or had it been removed and the proper clear zone been provided, [Decedent] would have been able to bring his car safely to a stop without a severe crash. Based on its trajectory when it struck the I-Beam, had the I-Beam not been there [Decedent's] car would have contacted some small shrubs on the Ferrettis' front lawn but would not have come in contact with their house.

(O'Conner Supp. Report, 8/26/14, at 9-10 (emphasis added).)

In response, Appellees presented the deposition testimony of James Franey, the only eyewitness to the accident. Franey stated that Decedent passed in front of Franey, who was stopped at the intersection of Blimline and Gouglersville Roads. Franey saw Decedent's vehicle leave the roadway and strike the I-beam. Franey stated that he did not observe any substances or slippery conditions on the roadway and that there was no other traffic on the roadway. Franey did not see anything that would have caused the accident.

4

Next, Appellees presented the deposition testimony of Charles S. Kiefer, Township's road master. Kiefer testified that he has worked on the road crew or as master since 2005. Kiefer stated that he was not aware of any accidents involving the I-beam before 2008. He also did not know about any complaints to Township regarding the I-beam. Kiefer confirmed that the I-beam was located in Township's right-of-way.

Finally, Appellees presented the deposition testimony of Harry T. Martin, Jr., a former Township employee. Martin testified that he had been on Township's road crew from 2005 through 2010. Martin stated that he was unaware of any accidents involving the I-beam prior to the accident at issue here. Martin knew where the I-beam was, had seen it, and believed it was not a problem.

Prior to filing an answer to Snyder's complaint, the Ferrettis filed preliminary objections asking the trial court to strike Snyder's request for punitive damages. The trial court struck Snyder's request for punitive damages, without prejudice. At the conclusion of discovery, both the Township and the Ferrettis filed motions for summary judgment, which the trial court granted. Snyder now appeals to this court.[2]

Initially, Snyder contends that the trial court erred in granting summary judgment for failure to adduce evidence of causation. Specifically, Snyder argues

---

[2] Our review of an order granting a motion for summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion. *Fagan v. Department of Transportation*, 946 A.2d 1123, 1125 (Pa. Cmwlth. 2008) (*en banc*).

that the trial court erroneously concluded that Snyder failed to prove the reason Decedent left the roadway.

"Summary judgment is proper only where there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law." *Bailets v. Pennsylvania Turnpike Commission*, __ A.2d __, __ (Pa. 2015) (No. 12 MAP 2014, filed August 31, 2015), slip op. at 6. "The evidence shall be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Fagan v. Department of Transportation*, 946 A.2d 1123, 1125 (Pa. Cmwlth. 2008) (*en banc*).

In order to state a cause of action in negligence, the plaintiff must set forth the following elements:

> (1) a duty on the part of the defendant to conform to a certain standard of conduct relative to the plaintiff; (2) defendant's failure to so conform; and (3) a reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff. Further, the *Caldwell* [*v. Commonwealth*, 548 A.2d 1284, 1286 (Pa. Cmwlth. 1988)] court held that where insufficient evidence exists to justify an inference of negligence and causation, the trial court may properly grant summary judgment in favor of the party against whom liability is sought.

*Saylor v. Green*, 645 A.2d 318, 320 (Pa. Cmwlth. 1994).

Here, Snyder alleges in his complaint that Decedent "was lawfully traveling east on Gouglersville Road . . . operating a 1990 Ford Escort . . .

6

[i]mmediately after passing the intersection of Blimline Road, decedent's vehicle impacted a 6" x 6" steel I-beam, 4.8' high . . . located approximately only 4' from the white fog line of Gouglersville Road . . . . As a direct and proximate result of the crash [Decedent] sustained serious injuries which . . . resulted in his death . . . ." (Compl., 7/21/10, at 4, 8.) The accident was the:

> direct result of the negligence, carelessness and recklessness of the Defendant Brecknock Township in regards to its construction and maintenance of Gouglersville and Blimline roads and its construction and maintenance of the subject I-beam, as specifically stated in the following subparagraphs:
>
> (A) Inadequately designed and maintained the geometry of the subject roadways, as the sharp horizontal curvature introduced at or near the top of the pronounced vertical curve did not comply with [the Pennsylvania Department of Transportation's (DOT)] design criteria and was unsafe for the traveling public;
>
> (B) Inadequate sight distance on Gouglersville Road near the site;
>
> (C) Inadequate roadway markings . . . .
>
> (D) Inadequate traffic control devices . . . .
>
> (E) Inadequate surface conditions on Gouglersville R[oa]d . . . .

(*Id.* at 8-9.)

Here, the trial court determined that there was no genuine issue of material fact because Snyder failed to prove causation, i.e., the reason Decedent left the roadway. However, Snyder set forth in his complaint and in O'Conner's supplemental report that Decedent left the roadway because of the dangerous

7

condition of the Township-owned roadway, including the inadequate design, sight distance, roadway marking, traffic control devices and surface conditions. Viewing the record in the light most favorable to Snyder, we must find that there is sufficient evidence in the record *to withstand a motion for summary judgment* that Decedent left the roadway due to the dangerous condition of Gouglersville Road. *See Bailets*, slip op. at 11-13. Accordingly, Snyder presented *prima facie* evidence of Township's negligence, which, at the very least, creates an issue of material fact that precludes the grant of summary judgment against Township.

Next, Snyder contends that there was sufficient record evidence that the Ferrettis' conduct in maintaining the I-beam caused Decedent's death. Snyder alleges that the Ferrettis "did not touch [the I-beam] and never moved it but that they repainted it[,] maintained it[,] *after* the Decedent's accident." (Snyder's Br. at 24 (emphasis added).) Snyder contends that Decedent's accident was foreseeable and that the Ferrettis' maintenance of the I-beam was causally related to Decedent's death.[3]

"[L]iability may be imposed where there is a foreseeable risk of harm to users of the highway." *Saylor*, 645 A.2d at 320. The evidence of record supports the Ferrettis' testimony that there were only two prior accidents in their front yard and that only one of the accidents may have involved the I-beam. It was not foreseeable that Decedent would die from driving off of the roadway and striking the I-beam.

---

[3] Snyder argues that the I-beam was installed by the previous owner to keep people from driving onto his lawn and into his shrubbery. Thus, it "was placed *with the specific intention that it be struck by vehicles that left the road*." (Snyder's Br. at 22.)

Further, Snyder does not allege that the Ferrettis installed the I-beam or left it in its location with the intention of keeping people from driving onto their lawn. Additionally, when the Ferrettis purchased the property, a Township speed limit sign was already attached to the I-beam. Section 67323 of The Second Class Township Code,[4] makes it a summary offense to "destroy, remove, injure or deface" any Township sign. Therefore, the Ferrettis could not have removed the I-beam because it was a Township sign-pole. The record establishes that the Ferrettis did not install or maintain the I-beam before Decedent's accident.

In *Fagan*, 946 A.2d at 1124, the estate of a deceased driver filed an action against DOT seeking recovery for DOT's alleged failure to design and maintain crashworthy guardrails, proper roadway shoulders, and berms. This court stated:

> Our Supreme Court's view of proximate cause, like its view of duty, is necessarily rooted in public policy considerations, that is, ideas of history, morals, justice and society in general in determining where the loss should fall. Courts faced with a causation question in leaving-the-pavement cases may resolve the issue with different language, but recent results are consistent: *the loss tends to fall on the party with some responsibility for the vehicle leaving the pavement and not on an owner of land or objects nearby*.

---

[4] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §67323.

*Id.* at 1128-29 (citation omitted) (emphasis added).  Thus, because Snyder fails to allege that the Ferrettis caused Decedent's vehicle to leave the roadway, the trial court did not err in granting the Ferrettis' motion for summary judgment.[5]

Accordingly, we affirm the trial court's order regarding the Ferrettis, reverse the trial court's order regarding Township, and remand for further proceedings.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

---

[5] Snyder also contends that the trial court erred in sustaining the Ferrettis' preliminary objections to Snyder's punitive damages claim against them.  However, we need not address this issue because the trial court properly dismissed the action against the Ferrettis.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Matthew J. Snyder,                    :
Executor of the Estate of             : No. 2233 C.D. 2014
Robert F. Snyder, Jr.,                :
                                      :
                          Appellant   :
                                      :
               v.                     :
                                      :
Brecknock Township,                   :
Fiorenzo Ferretti,                    :
and Christine Ferretti                :

## O R D E R

AND NOW, this 6th day of November, 2015, we hereby affirm the September 16, 2014, order of the Court of Common Pleas of Berks County (trial court) granting Fiorenzo and Christine Ferretti's motion for summary judgment, and reverse the trial court's September 16, 2014, order granting Brecknock Township's motion for summary judgment, and remand for further proceedings.

Jurisdiction relinquished.

_____
ROCHELLE S. FRIEDMAN, Senior Judge